THE HARRISON WIRE COMPANY v. THE HALL & WILLIS HARDWARE COMPANY, *Appellant*.

1. **Breach of Contract for Sale of Goods:** MEASURE OF DAMAGES. In an action against a vendor for failure to deliver goods, the rule of damages is, ordinarily, the difference between the contract price and the market price ; but when the vendee purchases at less than the market price, the difference between the price he pays and the contract price is the true measure of damages.

2. **Practice in Supreme Court.** The supreme court cannot reverse judgments upon questions involving the preponderance of evidence only.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

AFFIRMED.

*Dyer, Lee & Ellis* for appellant.

The court below committed error in not allowing the defendant as damages on the defendant's counter-claims the sum of $2,640.88, which was proven to be the true difference between the contract price and the market price which the defendant had to pay in order to fill its orders for fence-wire, the rule of law being well settled that the measure of damages in cases of this kind is the difference between the contract price and the market value at the time it should have been delivered. *Northrup v. Cook,* 39 Mo. 208; *Koeltz v. Blaeckman,* 46 Mo. 320.

*S. Hermann* and *Valle Reyburn* for respondent.

(1) In a suit on an open account, whether the action is in the form of a petition, or counter-claim, the items of the account must be either set forth in the pleading, or a copy of it must be attached to the same, reference being made to it in the pleading. Unless the items are so set forth, or attached to the pleading, the party is precluded from giving evidence thereof. R. S. 1879, sec. 3547; Boone on Code Plead. sec. 88; *Vassear v. Livingstone,* 13 N. Y. 252; *Cragin v. Lovell,* 88 N. Y. 363; Bliss on Code Plead. sec. 367; *Merritt v. Millard,* 5 Bosw. 653. (2) In actions against a vendor for failure to deliver goods, the measure of damages is the difference between the contract price and the market value, on the day of the breach. *Northrup v. Cook,* 39 Mo. 208; *Koeltz v. Bleckman,* 46 Mo. 320; *Rickey v. Tenbroeck,* 63 Mo. 563.

RAY, C. J.—The plaintiff herein is a corporation dealing in wire fencing at St. Louis, Missouri, and defendant herein is also a corporation engaged at Kansas City, Missouri, in the hardware business and trade. The petition is in two counts for goods and merchandise sold and delivered by plaintiff to defendant. As to the first count, there is no controversy, the judgment thereon in plaintiff's favor being conceded to be correct.

The second count in the petition is for goods and merchandise sold and delivered by plaintiff to defendant in January, A. D. 1883, and the amount for which plaintiff obtained judgment thereon is $1,397. The answer of defendant, in addition to a general denial, sets up two distinct and separate counter-claims, in two separate counts. If we have not misapprehended the record, and the positions and claims of the parties in this count, the second counter-claim is, with respect to this appeal, wholly immaterial. As we gather the facts, the amount for which defendant claims that judgment should have been given in its favor, by way of counter-claim, arises upon, and grows out of the first counter-claim exclusively. The first counter-claim is set up in the first count of the answer as follows: First: " Defendant, for a counter-claim against the plaintiff, states that, heretofore, to-wit, on the second day of November, 1882, the plaintiff entered into a contract, in writing, with the defendant, which is herewith filed, marked ' Exhibit A.,' and by which the plaintiff promised and agreed to sell and deliver to the defendant, fifty car-loads of barbed fence-wire, four-point licensed wire, one-half galvanized, if desired ; at six and one-half cents per pound for painted, and seven and one-half cents per pound for galvanized, price guaranteed on unfilled orders, ' F. O. B.,' in St. Louis to be taken by July, 1883, with the privilege of cancellation ; and which contract was then and there mutually agreed to and

accepted by both of the aforesaid parties. That, in accordance with the terms of said contract, the defendant did order and direct the plaintiff to ship and deliver to the defendant fifty car-loads [of barbed fence-wire as described in said contract; but the plaintiff failed, neglected and refused to deliver said fifty cars of barbed fence.wire, as required by their contract, with the exception of one car-load, whereby defendant says that he was damaged by the non-performance of said contract of plaintiff, in the sum of $3,000."

"Exhibit A.," referred to in this answer is as follows:

"KANSAS CITY, Mo., November 2, 1882.
"HARRISON WIRE CO.,
"St. Louis, Mo.

"*Gents :* Enter our order for fifty cars barbed fence-wire, four-point licensed wire, one-half galvanized, if desired; at six and one-half cents per pound for painted, and seven and one-half cents for galvanized; price guaranteed on unfilled orders, F. O. B. in St. Louis, to be taken by July, 1883, with the privilege of cancellation."

The contract, we may observe, was executed by both parties, plaintiff and defendant. The reply of plaintiff denied generally the allegations of the counter-claims and a second reply alleges that said "Exhibit A." attached to the counter-claim is so vague and indefinite that the minds of the parties never met and that the terms were never fully agreed upon.

At the trial, which was had before the court without the intervention of a jury, and without any declaration of law being asked by either party, the plaintiff had judgment upon both counts of his petition, as already indicated, and defendant had judgment on its said counter-claims, for nominal damages.

Controversy and differences arose, it seems, between the parties, subsequent to the giving and acceptance

of said order of November 2, designated as "Exhibit A," for said fifty cars of wire, as to the true meaning thereof, according to mercantile usage and custom, and a large portion of the evidence at the trial was directed to the explanation and proper construction of certain words and phrases employed therein. This issue, thus raised, was, upon the evidence at the trial, found by the court in defendant's favor, as the finding on the counter-claim for defendant, for nominal damages, manifestly shows, so that the propriety of the finding, for nominal damages, upon said counter-claim, is the main question now before us, the position of defendant being, if we correctly apprehend the same, that, upon the evidence in the cause, it should have had judgment on its said first counter-claim, in the sum of $2,641.98, instead of nominal damages, as found by the court.

The said claim of defendant, in this behalf, is based upon the evidence of Mr. Willis, its president and chief officer, briefly and in substance, to the effect, that during the period covered by the said contract of November 2, 1882, defendant, for the purpose of supplying its trade and filling its orders, ordered from time to time of plaintiff some thirty-one cars of said wire, four of which only were furnished by plaintiff, and that, in consequence of plaintiff's neglect and refusal to furnish the remaining twenty-seven cars, it was compelled to buy the same of other parties at prices in excess of the said contract price with plaintiff, and that said excess amounted, in the aggregate, to the sum of $2,641.98. Under the agreement of counsel, Mr. Hall is to be understood as testifying to like effect.

Mr. Willis testified that the prices paid for wire, bought of outside parties, in lieu of that contracted for of plaintiff, was less than the market price, though he seems unable to state what the market price was, at the time of purchase, except to say that it was higher than the prices paid. This sum, if paid for wire of like description, quality and value as that called for by the

said contract, would manifestly be the measure of damages as applicable to this particular case. Ordinarily, the rule of damages is the difference between the contract price and the market price, for this usually compensates and makes the injured party whole, but when the party is able, and in fact, does purchase at less than the market price, the difference between the price he in fact pays and the contract price is manifestly the just and true measure of damages. Such differences in values and prices are manifestly general damages, admissible and receivable, under the general allegation of damages, such as is contained in the answer and said counterclaim of defendant.

But the evidence as to the market price of wire, as we gather it, is by no means uniform or definite. Some portions thereof tend, we think, to show, that during the said period covered by said contract, the market price was lower, and that the wire bought might have been bought at or for less than said price fixed therefor in the said contract between the parties, of date November 2, 1882. Mr. Willis testifies as to this matter, that from and after the date of said contract to about December 1, following, the market price was declining; that wire was at this time constantly offered him at less than the contract price, and he mentions, we believe, the purchase by his company of some ten cars of other parties at less than the contract price. He also states, and the correspondence shows, that shortly after the said order of November 2, was given for the said wire to plaintiff, other parties offered defendant the same wire upon similar if not better terms. He says further that for a period of time, between said December 1, 1882, to March 1, 1883, wire advanced in price, but that on March 10, the price of wire was lower than on November 2, 1882, and that wire declined in price during the balance of said year 1883. In the course of his examination in respect to the Thomas wire, which was ordered, we

Harrison Wire Co. v. Hall & Willis Hardware Co.

believe, in January, 1883, he says he can't remember the market price and that he don't know what the prices were at that time.

Again, the following occurs in the testimony of Mr. Morton, an experienced dealer in wire in St. Louis, introduced in defendant's behalf:

" Q.   Isn't it a fact that from November 2, 1882, through the balance of that year, and through the year 1883, the tendency of wire was downwards with some fluctuations?

" A.   As a rule, yes, sir.

" Q.   The tendency was downwards constantly?

" A.   As a rule.

" Q.   In other words, you could buy wire cheaper later on than you could at that date in the market?

" A.   I think so."

There are perhaps some other features in the evidence in this behalf, but this is, we think, sufficient to show the conflict and doubt therein as to what the market price for the wire in question was, during the said period of defendant's purchase thereof covered by the said contract between the parties.   The weight of evidence and the credibility of witnesses, as to whether defendant 'bought at less than the market price, but in excess of the contract price, and could have bought in the market at or for less than the contract price, were for the trial court, which manifestly held by its said finding for nominal damages only that defendant had not satisfied the burden of proof devolved upon it under the issues on trial in the cause, as to the substantial damages claimed by reason of the breach or breaches of said contract.   Under numerous decisions of this court we cannot reverse judgments upon questions involving the preponderance of evidence only, whatever our view in that behalf may be.

This leads to an affirmance of the judgment and it is so ordered.   All concur.