J. H. BARNETT and W. R. O'NEAL, doing business as Barnett & O'Neal, Respondents, v. ELWOOD GRAIN COMPANY, Appellant.

Kansas City Court of Appeals, January 30, 1911.

1. **CONTRACTS: Plea on Merits: Waiver.** The provision of a contract for the sale of grain, that all differences be submitted to arbitration, is waived by a plea to the merits.

2. ———: **Demand Drafts: Notice.** Demand drafts must be presented to the drawee, notice by mail or telephone that they are in the hands of a third person for collection not being sufficient. This rule, however, is subject to variation according to the usage of a bank and its customers.

3. ———: **Cancellation.** Where the breach of a contract is insignificant in respect to the delay in payment of drafts after notice, defendant having sustained but small damages thereby, the latter is not justified in declaring the contract cancelled.

4. ———: **Custom: Damages.** If the custom for ascertaining damages for violations of contracts for the sale of grain, is in conflict with the laws of the state, it would not apply, where the contract provides that it shall be subject in every respect to interpretation under the laws of this state.

5. ———: **Damages: Measure of.** Where consequential damages are not sought, the proper measure of damage, in an action for breach of a contract for the sale of grain, is the difference between the contract price of the grain and the price at which a like amount at the time, provided in the contract, could have been purchased in the market the day after they received notice of defendant's intention to cancel the contract.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

AFFIRMED.

A. F. Sherman and Spencer & Landis for appellant.

Edmond C. Fletcher and Eugene Silverman for respondents.

BROADDUS, P. J.—This is a suit for damages alleged to have been incurred by reason of the failure of the defendant to comply with the terms of the following contract:

"CONTRACT FOR SALE.—ELWOOD GRAIN COMPANY.

Unless specially agreed otherwise, this contract is subject in all respects to the rules and regulations of the St. Joseph, Missouri, Board of Trade.

ST. JOSEPH, MO., Dec. 26, 1907.

"Barnett & O'Neal, Alexandria, La.

Dear sir: We hereby confirm sale to you per telegram of Dec. 24th, of 20,000 bushels No. 2 Mixed Corn, 62c Jany. Alexandria St. Joseph weights and St. Joseph grades to govern settlement. Shipment 5,000 bu. monthly during Feb., March, April and May. Demand drafts 62 3-4 for Feb. shipment and 3-4c in addition for each month thereafter including May.

"All sales 'by sample' are made conditional upon acceptance of carlots hereby official St. Joseph Board of Trade Sampler, for account of buyer.

"Account draft when attached to bill of lading to be paid by you. In the event you fail to do so, you hereby promise and agree to pay us the difference between the contract price and the price realized for the grain, together with any and all expenses incurred in disposing of said grain. This contract in every respect subject to interpretation under the laws of the State of Missouri. This constitutes our contract and supersedes all prior negotiations between us on this subject; but if this is not in complete accordance with your understanding of our contract wire us immediately.

ELWOOD GRAIN COMPANY."

The defendant's admended answer set up a denial that it violated the contract, and further that plaintiff had not complied with the terms thereof, in that, it

neglected to pay demand drafts upon the two carloads of corn shipped by defendant to apply on said contract, on account of which breach, defendant had cancelled the same.    The answer further alleges that plaintiffs prior to the commencement of this suit agreed to submit this controversy to the regularly constituted board of arbitration of the board of trade of Kansas City, Missouri; and that said matters had not yet been submitted in arbitration through no fault of defendant; that the said Board of Trade rates fixed the damage, if any, in such cases at the difference between the contract price and the market price of said commodity at the place of delivery the day following the announcement of the cancellation of said contract; that by the custom of the grain trade the measure of damages was the same as provided by said board of trade.

The plaintiffs after pleading a general denial, replied that they had fully complied with the terms of the contract, and that they had refused to accept the cancellation of the contract and that they had no knowledge of such a custom as to the measure of damages pleaded by defendant.

The evidence is that:  At the request of the plaintiffs, the defendant shipped two cars of corn containing 2518 bushels to apply on said contract; and on January the 29th, 1908, attached the bills of lading to two separate demand drafts for the value of the two cars of corn and deposited them in the First National Bank of Buchanan county, at St. Joseph, Missouri.   The drafts were received by the First National Bank of Alexandria, La., on February 1, 1908, and the bank notified them on the same day either by mail or telephone that the drafts were there for collection.   It was the custom of plaintiff to pay all drafts at said bank.   The defendant not hearing from said drafts, caused the St. Joseph bank to telegraph the Alexandria Bank on February the 4th or 5th, to return all unpaid drafts drawn on the plaintiffs.   The Bank of Alexandria thereupon protested

the two drafts, but after the bank had closed for the day permitted plaintiffs to pay the drafts together with the protest fees, and on the following day remitted the proceeds to the Bank of St. Joseph.

Upon learning the fact that the drafts had been held, the defendant telegraphed the plaintiff as follows: "We find you are not paying drafts on demand as per contract. Consequently we are cancelling the balance of your contract." To which plaintiffs replied: "You are wrong, our drafts were paid promptly, ship balance February contract at once. Will not accept concellation."

On March 18th, Barnett, representing the plaintiffs, and F. J. Delaney, representing the defendant met in Kansas City, Missouri, for the purpose of making a settlement of the differences, but not being able to agree upon the amount of damages, negotiations were had looking to an arbitration of the matter, until finally on June 3d, the defendant made a proposition to submit the said differences to the arbitration committee of the Kansas City Board of Trade, which was accepted by the plaintiffs by telegram on June 6th. Arbitration papers were prepared, but plaintiffs refused to proceed further with the arbitration.

The cashier of the Bank of Alexandria testified that, the reason the drafts were withheld was that, he knew they would be paid. One of the plaintiffs testified that no demand had been made upon plaintiffs by said bank, that he received the invoice for the corn through the mail from the defendant on February 5th, and went to the bank and paid said drafts on said day.

The plaintiffs over the objection of the defendant were allowed to prove that the market price of the corn was the same as that at St. Joseph, plus the cost of transportation. The objection to the evidence is that the plus freight rate was not legal, it not having been shown that such rate was on file with the Interstate Commerce Commission.

It was shown that prior to the contract in question plaintiffs had been doing business with the defendant as their brokers and that plaintiffs in their demand for damages included in their schedule had a claim for such brokerage, but this claim is not included in the petition and therefore is not an issue. The defendants attempted to show the regular course of business between plaintiffs and their bank as to the payment of drafts, but upon objection they were not allowed to do so, but the court confined the evidence as to what was done as to the particular drafts in question. The defendants offered to show the custom of the grain trade with reference to the ascertainment of the measure of damages accruing on contracts for the purchase and sale of grain which offer the court refused. A bank officer testified that he withheld the drafts at the request of plaintiffs, this however, plaintiffs denied.

At the close of plaintiffs' case the defendants moved to dismiss on the ground that there had been an agreement to arbitrate, which the court overruled, and the motion was renewed at the close of the testimony which the court again overruled.

The theory of the court, as gathered from its rulings and instructions given and refused was that; the agreement to arbitrate was waived by a plea to the merits; that it could not be said that plaintiffs had committed a breach of the contract by failing to pay the drafts until they were presented to them in person by someone having them in possession at the time of presentation; that plaintiffs had the option of refusing to accept defendants' claim of cancellation; that it was immaterial as between the parties to the action that no proof that a list of freight rates from St. Joseph to Alexandria had been filed with the Interstate Commerce Commission; that the custom prevailing for ascertaining the measure of damages on contracts of the character in issue was not applicable and that the custom or habit of the bank at Alexandria in presenting drafts to plain-

tiffs and receiving payment thereof, did not go to show any particular custom, other than that of the law merchant.

The defendant's plea of arbitration is unavailing. It is not pleaded that an agreement has been entered into to arbitrate the cause of action which would have the effect of its discontinuance. Bowen v. Lazalere, 44 Mo. 385; Hyatt v. Wolfe, 22 Mo. App. l. c. 201. But the allegation is that an arbitration of the subject-matter of the suit was agreed upon by the parties, but that no such arbitration had been held. It is said: "It is no answer to the merits until there is a good and binding award. It is by no means certain, because there is a submission that an award will follow." Bowen v. Lazalere, supra; Thompson v. Turney Bros., 114 Mo. App. 697.

One of the special provisions of the contract is that, plaintiffs should pay demand drafts on them for grain shipped. A question for the court was whether the plaintiff had violated this provision, if they failed to pay upon being notified by mail or telephone, that they were in the hands of the bank for collection. The court took the view that a demand made through the mail or by telephone was not such a demand as the contract contemplated. It is the conceded rule that such demand drafts must be presented to the drawee and that notice that they are in the hands of a third person for collection is not sufficient. But this rule is subject to variation according to the usage of a bank and its customers. [Maine Bank v. Smith, 18 Me. 100; Whitwell v. Johnson, 17 Mass. 451; Bank v. Brown, 22 Me. 295.] Such usage and custom may be shown to modify the general law merchant as applicable to such bank. [Bank v. L. Pinkers Co., 83 N. C. 377; Fredrick v. Mendall, 1 N. H. 80.]

The evidence tendered does not show that it was the general usage of the bank to make demand on drafts by mail or by telephone. There was no general rule in

that respect. Sometimes demands for payment of drafts were made upon plaintiffs in person at other times when more convenient, through the mail or by telephone. The evidence did not show such a rule in that respect as would change the rule of the law merchant.

It is true defendant did not know at the time it received the proceeds of the drafts that there had been a delay in their payment after notice and demand, if made, yet it had a right to refuse to make future deliveries and declare the contract forfeited, if the circumstances justified it in so doing. [Bradley v. King, 44 Ill. 339; Eastern Forge Co. v. Corbin, 182 Mass. 590.] But the breach of the contract was so insignificant in respect to the delay in payment of the drafts after notice, and the defendant not having sustained but small damage thereby, we do not believe under the circumstances defendant was justified in declaring the contract cancelled. The breach was technical and the extent of defendant's damage was the use of the money during a short time. [Taussig v. Mill & Land Co., 124 Mo. App. 1. c. 218; 7 Am. and Eng. Ency. of Law, p. 150.]

The holding of the court that the custom of ascertaining damages for violation of contracts of this character did not govern in this case was the correct one. The provision in the contract, that it should be subject in every respect to interpretation under the laws of the State of Missouri, we believe governs. If the custom in such cases in determining the measure of damages was in conflict with the law of the state, it would not apply, therefore it was not material what was such custom.

We accede to the statement of defendant that: "A party to a contract is required to use reasonable diligence to mitigate the damages caused by the obligor's breach." If plaintiffs were seeking to recover consequential damages by reason of the failure of defendant to furnish the corn contracted for, such as losses by reason of their inability thereby to furnish such corn previously sold to customers, then under the rule, the

duty would devolve upon them to go upon the market and buy other corn in order to avoid such loss as far as possible. But as the case stands the suit is not for consequential damages, and plaintiffs were not required to go upon the market to buy other corn, as the difference between the market price and the price fixed by the contract would be the same whether they bought other corn or not. The court instructed the jury properly, that if they found for plaintiffs, they would assess their damages at the difference between the contract price of the corn and the price at which a like amount at the time, provided in the contract, could have been purchased in the market the day after they received notice of defendant's intention to cancel the contract. [Creve Coeur Lake Ice. Co. v. Tamm, 90 Mo. App. 189.]

Among other contentions defendant insists that the contract was made in the name of plaintiffs merely for convenience and that plaitiffs were at a matter of fact acting as brokers, and that such being the case they were not entitled to recover for non-fulfillment of the contract. Such a construction would in effect be in contradiction of the contract and render it a nullity. But it does not in any view justify such a construction, and any evidence, if there was such, tending to show that the plaintiffs were merely acting as brokers for defendant, was wholly inadmissible.

Other questions are raised in appellant's brief, but we do not deem them important. What has been said disposes of every material question raised in the admission or rejection of evidence and in the giving and refusng of instructons. We are further satisfied that the judgment is for the right party and should be affirmed and it is accordingly so ordered. Affirmed. All concur.