GREAT EASTERN OIL COMPANY, a Corporation, v. DEMERT & DOUGHERTY, INC., a Corporation, Appellant.—No. 38107.—166 S. W. (2d) 490.

Division One, December 1, 1942.

Rehearing Denied, December 15, 1942.

*Jones, Hocker, Gladney & Grand* and *Vincent L. Boisaubin* for appellant.

*Joseph L. Simpson, Anderson, Gilbert, Wolfort, Allen & Bierman* and *Rassieur, Long & Yawitz* for respondent.

538

 HYDE, C.—This is an action for damages for breach of contract for sale of 35,000 gallons of denatured alcohol for antifreeze purposes. Plaintiff had verdict and judgment for $9902.01. Defendant has appealed.

Defendant assigns as error the refusal to direct a verdict in its favor. Defendant contends that the alleged contract lacked mutuality and is void for want of consideration. In March, 1931, defendant's salesman Mr. Zumwalt called on Mr. Solomon, then individually doing business as Great Eastern Oil Company (this business was thereafter incorporated under that name) and they reached an agreement upon price for the Oil Company's supply of antifreeze alcohol for the next year. (We will use the term "plaintiff" to refer to the Oil Company both before and after incorporation.) The antifreeze alcohol season was from October 1st to March 31st. A printed form was filled out (words written in are hereinafter shown in italics) and signed by them. This printed form was headed: "DeMert & Dougherty, Incorporated. 1600 Clark Avenue, St. Louis, Missouri." "Pyro Brand Denatured Alcohol Contract." On each side of the form appeared in large type "Price as Quoted is guaranteed (to time of delivery) against advance or decline in general market quotations."

The material parts of this form as filled out and signed were as follows:

"DeMert & Dougherty, Inc. hereinafter called 'Seller,' agrees to sell and deliver to *Great Eastern Oil Co.* of *St. Louis, Mo., 101 Barton Street,* hereinafter called 'Buyer,' who hereby agrees to order out, receive and pay for the merchandise hereinafter described, upon and under the terms and conditions hereinafter set forth, which merchandise is sold firm and not subject to cancellation.

"Merchandise: 188 Proof Completely Denatured Alcohol. Formula No. 5. Pyro Brand. Seller shall not be liable for loss or damage ensuing from the sale of this merchandise to the trade, or from the application to or mixture with other articles.

"Quantity: (——) Drums of 53 gauge gallons each at 60 degrees Fahrenheit. *Maximum of 35,000 gallons.*

"Price: 24c Per Gauge Gallon of 60 degrees Fahrenheit *in Drums. In tank cars 20½c St. Louis.* . . .

"Containers: One Gallon (lithographed) cans, ten cans to case, case lots only. Price 15c per gallon over drum price. *If in drums, same returnable for credit of $1.00 each.*

"Terms: No discount to be allowed on containers or freight charges. 1% cash discount. If Buyer fails to fulfil the terms of payment or any other terms of this contract, or of any other contract of Buyer with Seller, or if Buyer's financial responsibility shall become impaired in the judgment of the Seller, then Seller may defer shipments until payment be made or terms of contract be complied with, or may demand cash payment for the balance of the merchandise called for hereunder, or may cancel this contract. . . .

"Deliveries: As required in approximate equal monthly proportions from September 1st, 1930, to December 31, 1930. . . .

"*Drayage allowance of ½c per Gal. on drums called for at our warehouse.* Ship ———Drums any time during the Month of September 1930.

"Each shipment to be treated as a separate sale or contract—in case buyer does not take shipments as specified, seller shall have option of canceling the contract or postponing delivery. . . .

"Execution: It is agreed that this written contract contains all of the terms of the agreement between the parties and that there are no conditions, understandings or warranties, oral, written or implied that are not contained herein.

"This contract is not binding upon the seller until signed by an executive officer.

"Accepted; *Great Eastern Oil Co. by J. B. Solomon.* Dated *3/30/31.* Salesman: *G. E. Zumwalt.* Approved: DeMert & Dougherty, Inc., by *F. M. Bauer,* Executive Officer."

This form was returned to plaintiff after it was signed by Mr. Bauer, defendant's St. Louis manager, with the following letter, dated April 17, 1931. (The printed contract form and letter were "clipped together.")

"Gentlemen: We enclose herewith, for your files, copy of signed contract covering your purchases from us of 700 drums of Pyro Brand 188-Proof Completely Denatured Alcohol for delivery as required by you to March 31, 1932.

"The price is 24c per gallon, drums included. The drums are your property. We will purchase the empty drums from you at $1.00 (one dollar) each.

"The Alcohol will, therefore, cost you some 22c (twenty-two cents) a gallon.

"This is the lowest price ever quoted on Pyro Alcohol. The Standard Anti-Freeze.

"This price is further guaranteed against market declines. You cannot lose, and are assured of receiving genuine Pyro Alcohol at a price that will permit of its sale by you at a profit. May we suggest that you handle Pyro Alcohol exclusively? It is the Nationally Advertised Standard Anti-Freeze.

"Please do not be misled into signing any other contract as we have covered your requirements.

"Due to national advertising via radio, etc., the consuming public has become Pyro conscious. Increase your sales by handling only Pyro Brand.

"We are authorized sales and distributing agents for the U. S. Industrial Alcohol Company, the world's largest producers of Alcohol and sole manufacturers of Pyro.

"We take this occasion to thank you for again favoring us with your order.

"Cordially yours,
"DeMert & Dougherty, Inc.,
"by F. M. Bauer."

Plaintiff's petition was on the theory that both the printed contract form and the letter constituted the contract. Defendant's answer contained a general denial and alleged breach by plaintiff giving it the right to cancel the contract because plaintiff failed to fulfill the terms of payment by permitting invoices to become past due and go unpaid for an indefinite period. It also stated that it had the right to cancel because the financial responsibility of plaintiff became impaired and because "the contract sued on herein required the plaintiff herein to take the alcohol mentioned in the contract, to-wit, 35,000 gallons, in approximate monthly proportions, and that the plaintiff failed and refused so to do, but in truth and in fact up to the time of the cancellation of the contract plaintiff herein had only taken one-seventh of the alcohol mentioned in the contract."

Mr. Solomon and his attorney who filed this suit on March 19, 1932 (it was not tried until 1941), both testified that after refusing to deliver alcohol (on January 9, 1932) defendant's manager, Mr. Bauer, stated as the only reason for refusal of deliveries, that plaintiff's contract had expired on December 31, 1931. (However, deliveries were made up to and including January 7, 1932.) Mr. Solomon also said that Mr. Bauer told him that alcohol had gone up to 44c per gallon, and that further purchases would have to be made at that price. He said no complaint was then made about plaintiff's account or financial standing. Plaintiff's evidence showed that it sent to defendant's Chicago ▮ office its payment for each month's account on the 10th of the following month, taking a one per cent discount. No complaint was ever made about this, although some of defendant's invoices to plaintiff stated terms as "one per cent ten days, net thirty days," and others as "one per cent five days, net fifteen days." Plaintiff had been doing business with defendant for "a couple of years" before 1931.

Plaintiff contends that defendant recognized the validity of the contract by its pleadings, evidence and instructions in the trial. It is true that defendant alleged a breach by plaintiff and seemed to proceed on the theory (so far as any specific statement in the record is concerned) at the trial that there was a valid contract which it was entitled to cancel because of plaintiff's failure to comply with its terms. However, defendant's answer did contain a general denial and defendant did ask peremptory instructions. Therefore, we prefer to consider defendant's contentions concerning lack of mutuality.

▮ Defendant relies upon such cases as Hudson v. Browning, 264 Mo. 58, 174 S. W. 393; Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d)

571; Campbell v. American Handle Co., 117 Mo. App. 19, 94 S. W. 815; Saginaw Medicine Co. v. Dykes, 210 Mo. App. 399, 238 S. W. 556; Jennings, Inc., v. Hirsch Rolling Mill Co. (Mo. App.), 242 S. W. 1003; Malloy v. Egyptian Tie & Lumber Co., 212 Mo. App. 429, 247 S. W. 469. [For a criticism of Hudson v. Browning, supra, see 9 U. of Mo. Law Bulletin 38; see also 17 St. Louis Law Rev. 9-11; 4 Mo. Law Rev. 306.] In Moran Bolt & Nut. Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 109 S. W. 47, this court adopted the statement of Justice Sanborn in Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, as follows:

"The rules applicable to contracts of this class may be thus briefly stated: A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer." [See also Laclede Const. Co. v. T. J. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Laclede Const. Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384; 12 Am. Jur. 554, Secs. 64-71; 55 C. J. 192, Secs. 147-150; American Law Institute Restatement of Contracts, Sec. 32.]

Of course, as shown by these authorities, neither party is bound unless both are bound. In short, there is no contract unless both are bound. However, we think it is a reasonable construction of this transaction to say that the printed form and the letter together did make a definite contract. In the first place defendant's salesman called on plaintiff in March, 1931 (which was at the end of that winter's antifreeze season) concerning plaintiff's "next year's supply of alcohol." (Plaintiff had been defendant's customer for two years but there is nothing in the record to show what amount of alcohol plaintiff had purchased in any prior year.) When they agreed on a price, this printed form was filled out by defendant's salesman in duplicate and presented to Mr. Solomon who signed it. It was also signed by Mr. Zumwalt as salesman but it stated "this contract is not binding upon the seller until signed by an executive officer." Thus it seems to have been intended to be an offer to buy. (Defendant's letter called it an order and surely an order is an offer only.) What was the offer? It may be ambiguous. But is it not reasonable to construe it as an offer to purchase any amount up to 35,000 gallons that defendant would agree to sell? We think that the conduct of both parties clearly indicates that they did so treat it. This printed form stated that the buyer "agrees to order out, receive and pay for

. . . not subject to cancellation . . . maximum of 35,000 gallons.'' Defendant's letter certainly construed it as such an offer because it accepted the offer up to this maximum, for the whole amount plaintiff offered to buy, by stating in its letter that it was for ''covering your purchases from us of 700 drums,'' of Pyro alcohol. But in this letter, defendant went further and made such acceptance clear and definite by saying ''do not be misled into signing any other contract as we have covered your requirements.'' What requirements? Surely the maximum requirements stated in the offer 35,000 gallons, all requirements for the year ending March 31, 1932.

The blank form had obviously been prepared for certain 1930 orders. It contained the statement, wholly inapplicable to orders taken in March, 1931, ''as required in approximate equal monthly proportions from September 1, 1930, to December 31, 1930,'' and ''Ship ——— drums any time during the month of September, 1930.'' The evidence plainly shows that the parties were negotiating about requirements for the next year from March, 1931, to March, 1932. The statement in defendant's letter ''for delivery as required by you to March 31, 1932'' was in accord with the understanding of both parties, in their negotiations, according to the evidence. [For cases in which correspondence was held to recognize and supply essential contract provisions see Wisconsin & Arkansas Lbr. Co. v. Buschow Lbr. Co. (Mo. App.), 257 S. W. 840; Interior Linseed Oil Co. v. Becker-Moore Paint Co., 273 Mo. 433, 202 S. W. 566; see also Riddle v. Castner, 202 Mo. App. 584, 209 S. W. 127.] Defendant says that this statement ''as required by you to March 31, 1932'' still left the amount indefinite. However, in view of the definite amount stated in this letter (700 drums) and all the surrounding circumstances shown in evidence, we think it is reasonable to construe this to refer to time of deliveries to be made rather than to total amount to be purchased. [See Riddle v. Castner, 202 Mo. App. 584, 209 S. W. 127.]

██ Furthermore, it would seem this is a case where defendant should be held estopped to deny that the return of the printed form with the letter on April 17, 1931, both signed by Mr. Bauer constituted a completed contract for 35,000 gallons (700 drums) of alcohol. [Priest v. Oehler, 328 Mo. 590, 41 S. W. (2d) 783; Motor Freight Terminal Corp. v. Brooks (Mo. App.), 132 S. W. (2d) 1064; 19 Am. Jur. 800, Sec. 148; 31 C. J. S. 366, Sec. 114.] The printed form contained the statement in large letters in the margins on both sides that the ''Price as quoted in Guaranteed'' against decline in market. The letter also said ''this price is further guaranteed against market declines''; and then said ''do not be misled into signing any other contract as we have covered your requirements.'' There is no claim that plaintiff did sign any other contracts, or bought from anyone else until defendant refused to deliver any more at the contract price. Defendant did deliver every shipment asked for by plaintiff until

January 9, 1932. Even then it did not claim that there had never been a valid contract, but (according to plaintiff) claimed it had expired, and (according to its own evidence) claimed the right to cancel it for plaintiff's breach. According to plaintiff's evidence, plaintiff could only fulfill its commitments by purchasing alcohol at almost double the price it was paying defendant; while defendant's own evidence showed that it had contracted for and did obtain its entire supply of this alcohol at 19½c. Therefore, defendant could not have lost money by fulfilling plaintiff's requirements, although it could make more profit by refusing to do so. We hold that estoppel could properly constitute another ground for refusing defendant's requests for a directed verdict.

Defendant also contends that there was no competent evidence of any damages because plaintiff's evidence was insufficient to prove market value. (Wholesale market price on date of breach.) Plaintiff showed the price it paid another dealer in St. Louis in January and February, 1932 for the purpose of filling commitments, and defendant says this was error; citing Scullin Steel Co. v. Mississippi Valley Iron Co., 308 Mo. 453, 273 S. W. 95; 55 C. J. 1143, Sec. 1133; and 38 C. J. 1261, Sec. 16(b). However, plaintiff does not rely upon these invoices as proof of market value. Plaintiff says their introduction was invited by defendant's cross-examination concerning plaintiff's purchases of alcohol from others. Defendant also claimed plaintiff had the duty to use reasonable diligence to mitigate damages by obtaining its requirements elsewhere. Therefore, we cannot find any prejudicial error in the admission of these invoices

On market value, plaintiff had evidence that defendant's own officers told them on January 9, 1932, that the market price of this alcohol was then 44 cents. Plaintiff also introduced invoices of sales by defendant to others (not under contracts) in 53-gallon drums at 45.4 cents per gallon on January 9, 1932, and thereafter. Defendant's evidence (Mr. Bauer) at the trial, first was that there were sales at lower prices during this period, producing invoices; but it was later shown that these were all under contracts. Mr. Bauer failed (after ample opportunity to search defendant's records) to find invoices of sales not under contracts to substantiate his testimony. Moreover, when Mr. Bauer's deposition was taken in June, 1932, he admitted that the price of alcohol was then 45 cents per gallon but said he did not know when it reached that price or what the price was at any time between October, 1931, and May, 1932. We rule that the evidence was sufficient to sustain the jury's finding as to market price.

As to defendant's further contentions concerning plaintiff's duty to mitigate damages and as to showing plaintiff's requirements up to March 31, 1932, we think it overlooks the fact that plaintiff had the right (under the contract) to have defendant deliver 35,000 gallons

to it (and according to plaintiff's evidence this would have been very profitable to it) and also the proper measure of damages in such cases, namely: the difference between the contract price and the market price at the time of breach of contract, or date delivery was due if specified. [Scullin Steel Co. v. Mississippi Valley Iron Co., 308 Mo. 453, 273 S. W. 95; Mankofsky-Goldstein Shoe Co. v. J. W. Carter Co. (Mo. App.), 33 S. W. (2d) 1049; Pratt v. Schreiber, 213 Mo. App. 268, 249 S. W. 449; Heller v. Ferguson, 189 Mo. App. 484, 176 S. W. 1126; Riddle v. Castner, supra; 55 C. J. 1156, Sec. 1146; 24 R. C. L. 72, Sec. 337.] If the buyer does purchase the goods elsewhere, the measure of damages will be the difference between the contract price and the purchase price, at least up to market value. [Dierks Lumber & Coal Co. v. Duncan Shingle & Lumber Co. (Mo. App.), 234 S. W. 362; Harrison Wire Co. v. Hall & Willis Hardware Co., 97 Mo. 289, 10 S. W. 619; 55 C. J. 1170, Sec. 1156; see also Hardesty Co. v. Schaefer (Mo. App.), 139 S. W. (2d) 1031.] Therefore, "if he can supply himself with goods of like kind at the place of delivery, or other available market at the time of breach for a price *not exceeding the contract price* he must do so"; but this rule "is without practical application where the goods have a market value at the time and place of delivery and the vendee does not propose to prove special damages." [55 C. J. 1172-1173, Sec. 1156; 24 R. C. L. 70, Sec. 335.] Thus, "if the case is one where the ordinary rule of damages would apply, it is not necessary that the buyer should actually go into the market and repurchase at the market price in order to recover the difference between the contract price and the market price," because this would be of no advantage to the seller. [55 C. J. 1173; Barnett v. Elwood Grain Co., 153 Mo. App. 458, 133 S. W. 856; see also 24 R. C. L. 75, Sec. 340 et seq.] There was no evidence in this case to show that plaintiff could have purchased alcohol from others at the contract price or at any price less than it did pay. Therefore, we must rule that defendant was not entitled to a directed verdict.

Defendant further assigns as error excessive verdict and erroneous instructions. Defendant's claim as to the highest amount plaintiff could recover is that in any event the only reasonable construction of the contract and the letter together is to deliver the alcohol "as required by you in approximate equal monthly proportions to March 31, 1932." Defendant says, therefore, "the obligation was limited to one-twelfth of 35,000 gallons each month, one-twelfth of 35,000 is 2,917 gallons"; that "plaintiff would be entitled, under this construction to (2,917-813) 2,104 gallons in January, 2,917 gallons in February, and 2,917 gallons in March, or a total of 7,938"; and that "the damages would then be 22 cents per gallon (44-22) on 7,938 gallons, or $1,746.36." We cannot sustain this construction because the provision for equal monthly proportions, which defendant seeks to insert in the letter, was in the printed form and ap-

plied to the dates, September 1, 1930, to December 31, 1930. The negotiations for this contract begin in March, 1931, and these provisions in the printed form obviously did not apply. Thus, the time and terms of delivery stated in the letter were the only provisions that did apply and these were shown to be in accordance with the intention and agreements of both parties in their negotiations. There is nothing, concerning defendant's assignment as to instructions, in its points and authorities, or even in its argument, except as to the legal propositions upon which we have hereinabove ruled. (Allowing recovery for full balance of 35,000 gallons not delivered, excessive amount for market price, failure to construe the contract as requiring delivery in equal monthly installments, etc.) We, therefore, overrule this assignment.

The judgment is affirmed. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.