# MARCH, 1944.

MORRIS STEINBAUM, RESPONDENT, v. S. MAYNER WALLACE, ADMINIS-
TRATOR C. T. A., D. B. N. OF THE ESTATE OF C. A. LOVEJOY, DE-
CEASED, APPELLANT.—176 S. W. (2d) 683.

St. Louis Court of Appeals. Opinion filed January 4, 1944.

Appellant's motion for rehearing overruled January 21, 1944.

Petition for Writ of Certiorari denied by Supreme Court March 6, 1944.

*Everett Paul Griffin* for appellant.

*Joseph Boxerman* and *Wm. H. Allen* for respondent.

McCULLEN, J.—This action in replevin was brought by respondent, as plaintiff, to recover possession of a cashier's check in the sum of $4000 issued by the Mutual Bank & Trust Company, payable to S. Mayner Wallace, administrator c.t.a., d.b.n. of the estate of C. A. Lovejoy, deceased, hereinafter referred to as defendant. A trial before the court, a jury having been waived, resulted in a finding

that plaintiff was the owner and entitled to possession of the property described in the petition and that defendant has possession thereof and wrongfully detains same from plaintiff. The court assessed the value at $4000 and awarded damages of $86.00 for the detention of the property. The court also rendered judgment in favor of plaintiff and against defendant and the United States Fidelity and Guaranty Company, the surety on the forthcoming bond, for the $86.00, and that defendant return the property to plaintiff, or at the election of plaintiff that plaintiff have and recover of defendant and his said surety the further sum of $4000, and for costs. The defendant duly appealed.

Claude A. Lovejoy, deceased, was a nonresident of Missouri. An asset of his estate was an unexpired term of a fifteen year lease of the Majestic Hotel located at the northeast corner of Eleventh and Pine Streets in the City of St. Louis, Missouri. The lease was executed by the Buddon Realty Company as lessor to C. A. Lovejoy. It was dated February 18, 1939, and was for the hotel building and the furniture, fixtures and equipment therein. The term of said lease extended to February 28, 1954.

On May 23, 1942, Mr. Boxerman, attorney for plaintiff, delivered to defendant a written proposal in duplicate signed by plaintiff and dated May 22, 1942, for the purchase by plaintiff of said leasehold from defendant wherein plaintiff proposed to pay $35,000 for the lease. Plaintiff delivered to defendant with the proposal a cashier's check for $4000, as earnest money and part of the purchase price, and agreed to assume a debt of $3000, and to pay the balance of $28,000 in cash upon the closing of the sale. The written proposal, which was introduced in evidence as plaintiff's exhibit 1, contained a statement that it was subject to approval of the probate court and recited that the matter of accounts receivable from guests of the hotel, as of the date of the closing of the sale, would be "covered in a memorandum between the parties thereto presently to be executed." The proposal was accepted in writing by defendant, the acceptance being dated May 25, 1942.

Plaintiff had procured the issuance of the cashier's check by the Mutual Bank & Trust Company. It was in the sum of $4000 for which plaintiff gave his check to said Bank & Trust Company. The cashier's check was dated St. Louis, May 22, 1942, and was payable to the order of S. Mayner Wallace, administrator c.t.a., d.b.n. of the estate of C. A. Lovejoy, deceased.

Prior to May 23, 1942, there had been discussions between plaintiff and his attorney and the defendant administrator; and Mr. Boxerman, attorney for plaintiff, together with defendant, had drawn up and approved the necessary papers which were to be presented to the Probate Court of the City of St. Louis for the purpose of obtaining the approval of said court to the sale of said lease. They also prepared and agreed upon the form of the instrument to transfer

the title, and the form of an escrow agreement under which plaintiff was to deposit the balance of $28,000 in escrow with the Mississippi Valley Trust Company to abide the obtaining of a declaratory judgment respecting the validity of the defendant administrator's title, in the event that the lessor should raise any such question.

On May 26th, or 27th, 1942, plaintiff went to see the defendant at his office in the Boatmen's Bank Building and stated to him that he had "bad news"; that plaintiff had just made some further examination of the hotel and that he thought $10,000 or $15,000 more than he had estimated would be required to put the hotel's furnishings and equipment in the condition he desired, and that he would, therefore, not pay $35,000 but would pay $30,000. Upon defendant's refusal to reduce the price plaintiff inquired whether his earnest money cashier's check for $4000 would be given back to him. Defendant declined to return the check. There was correspondence between plaintiff's attorney and defendant, in which plaintiff's attorney demanded return of the cashier's check and defendant refused to return it, and in which they argued briefly in support of their respective contentions; but in the view we take of the case, it is unnecessary to set forth such correspondence.

Defendant contends that it having been neither pleaded nor proved that at the time of the institution of this action the property sought to be recovered by plaintiff was within the City of St. Louis, it follows that the court below had no jurisdiction over the subject matter of this action. In support of this contention defendant cites Sections 1811 and 872, Revised Statutes Missouri 1939 (Mo. R. S. A., secs. 1811 and 872), and certain decisions of our appellate courts. We are unable to agree with defendant's view on this point. There is nothing in the record to indicate that defendant at any time questioned the jurisdiction of the circuit court before or at the trial. The record shows that plaintiff's petition and affidavit were in strict conformity with the statute, Section 1788, Revised Statutes of Missouri, 1939 (Mo. R. S. A., sec. 1788), which relates to replevin in courts of record.

While it is true that under Section 2936, Revised Statutes Missouri, 1939 (Mo. R. S. A., sec. 2936), in an action of replevin begun before a Justice of the Peace the statement filed must show that the property was wrongfully detained by the defendant "at the county of —— aforesaid," it is not fatal to the jurisdiction of the court over the subject matter to fail to plead such jurisdictional facts where the suit is instituted in the circuit court, which is a court of record and of general jurisdiction. [St. Charles Savings Bank v. Thompson & Gray Quarry Co. (Mo.), 210 S. W. 868.] The circuit court being a court of general jurisdiction, proceeding according to the course of the common law, it will be presumed, in the absence of anything to the contrary appearing in the record, that the court rightfully exercised jurisdic-

tion in the case. This fundamental principle of law has been long established in this State and has been applied in numerous cases of various kinds.

In Gates v. Tusten, 89 Mo. 13, 14 S. W. 827, which was a suit begun by attachment, it was held that where the record of a court of general jurisdiction shows that it assumed to exercise jurisdiction over a person or subject matter, in the absence or silence of the record as to any fact showing acquisition of jurisdiction or how it was acquired, then jurisdiction is presumed, and that nothing shall be intended to be out of the jurisdiction of a superior court, but which specially appears to be so.

Schad v. Sharp, 95 Mo. 573, 8 S. W. 549, was an action in ejectment to recover possession of a strip of land in Morgan County, Missouri. There was a verdict and judgment for plaintiff and defendant appealed. The jurisdiction of the Circuit Court of Morgan County to try the case was questioned for the first time in the Supreme Court on the ground that there was no affirmative showing that the land sued for was in Morgan County. The court, answering that contention, said:

"Conceding this to be so, it does not follow that the land was not in Morgan County, and that the Circuit Court of that county did not have jurisdiction. Nothing appearing in the record to show that the land was not in that county, and the Circuit Court being a court of general jurisdiction, it will be presumed to have exercised its jurisdiction rightfully, and 'nothing shall be intended to be out of the jurisdiction of a superior court but which specially appears to be so.' [Gates v. Tusten, 89 Mo. 13; Huxley v. Harrold, 62 Mo. 516.]" [Schad v. Sharp, 95 Mo. l. c. 576.]

State v. Baty, 166 Mo. 561, 66 S. W. 428, was a prosecution on a charge of murder in first degree. Defendant was convicted of second degree murder and appealed to the Supreme Court. It appeared that by agreement made in the August term that the case had been set for trial on the first Monday in October following. The judgment of conviction was attacked in the Supreme Court on the ground that the trial court did not have jurisdiction to try the cause because no record of an adjournment appeared from the August term, 1900, to the first Monday in October, 1900. It was contended that that fact could only appear by record and that in criminal cases jurisdiction could not be conferred by the consent of the accused. Answering such contention, the Supreme Court held that every presumption will be indulged in favor of the correctness of an action of a court of general jurisdiction, and "that it proceeds by right and not by wrong." The court said:

"If the record is silent about a matter necessary to confer jurisdiction, or more properly, to cause it to attach in the particular instance, the existence of such matter (nothing appearing of record to

the contrary) will be presumed, . . . '' [State v. Baty, 166 Mo. l. c. 564.]

Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330, was an action for damages for personal injuries alleged to have resulted from negligence. There was a judgment for plaintiff and defendant appealed. In the appellate court the defendant, for the first time, raised the question of the trial court's jurisdiction to try the cause. The point involved was whether plaintiff's petition stated a cause of action at common law triable before the circuit court, or whether the facts pleaded made the case cognizable only by the Compensation Commission. In affirming the judgment of the circuit court the Supreme Court held that where the petition does not affirmatively show want of jurisdiction but merely fails to state a fact which would give jurisdiction and might be alleged consistently with the petition, the defect, unless demurred to, is cured by verdict. The court based its ruling upon the principle stated in Gill v. Sovereign Camp, W. O. W., 209 Mo. App. l. c. 71, 236 S. W. 1073, l. c. 1075, as follows:

''When the record of a court of general jurisdiction is silent about a matter necessary to confer jurisdiction, the existence of such matter will be presumed.'' [Kemper v. Gluck, 327 Mo. 733, 742, 39 S. W. (2d) 330, 334.]

In Hadley v. Bernero, 103 Mo. App. 549, 78 S. W. 64, which was an unlawful detainer action originating in a justice of the peace court, defendants appealed to the circuit court, where judgment went against them, and they appealed to this court where the point was raised against the jurisdiction of the circuit court. In a carefully written and rather extensive opinion this court, in affirming the judgment, held that where the record of a court of general jurisdiction is silent as to jurisdictional facts, or contains no findings thereon, the presumption prevails that the court has jurisdiction.

In Hall v. Thurman (Mo. App.), 86 S. W. (2d) 1069, which originated in a justice court where judgment was for plaintiff, defendant appealed to the circuit court but gave no notice of appeal. After a lapse of more than two years plaintiff was granted leave to supply the files, which had been lost from the office of the circuit court clerk, including the judgment and affidavit for the appeal which had been taken by the defendant. Plaintiff's motion to affirm the judgment of the justice was sustained and defendant appealed. Defendant contended that the circuit court did not have jurisdiction of the cause for the reason that the lost files had not been supplied in accordance with Section 3249, Revised Statutes Missouri, 1929. The appellate court, in affirming the circuit court's action, held that where the record of a court of general jurisdiction is silent about a matter necessary to confer jurisdiction, existence of such matter will be presumed. The appellate court also held that before a court of appeals can properly interfere with a judgment of the circuit court

in a matter falling within that court's general jurisdiction, a want of jurisdiction must affirmatively appear.

In State v. Baker, 246 Mo. 357, 372, 152 S. W. 46, which was an appeal from a conviction on a charge of murder in first degree, the court, in affirming the judgment, said:

"We simply reaffirm the salutary rule that want of jurisdiction must be affirmatively shown. It will not be presumed from the mere failure of the record to speak on that subject." [State v. Baker, 246 Mo. l. c. 372.]

The cases of Hauser v. Burge (Mo. App.), 121 S. W. (2d) 314, and National Bond & Investment Co. v. Mound City Finance Co. (Mo. App.), 161 S. W. (2d) 664, cited and relied on by defendant herein to support his contention that the circuit court did not have jurisdiction, are not applicable to this case. Each of the two cases originated in a justice of the peace court. There is no presumption in favor of the jurisdiction of a justice of the peace court because such court is a statutory court of limited jurisdiction. The facts showing jurisdiction must affirmatively appear in order to give such a court jurisdiction. Where a case originates before a justice of the peace and the facts showing jurisdiction of that court do not affirmatively appear, such court has no jurisdiction, and, of course, on appeal, the circuit court will be held to have no jurisdiction because the justice of the peace had none.

However, the rule is different in cases originating in a court of general jurisdiction, such as the circuit court herein. In such cases the presumption is that the court had and rightfully exercised jurisdiction unless there be an affirmative showing to the contrary. This fundamental distinction in the character and authority of said courts is clearly and definitely recognized by our Supreme Court and the Courts of Appeals, as shown in the cases which we have heretofore referred to and many others not necessary to mention.

Furthermore, we are of the opinion that the defendant's contention, that there is nothing to show that at the time this action was filed on August 5, 1942, the check in question was within the jurisdiction of the Circuit Court of the City of St. Louis, is not sustained by the record. Defendant not only did not deny that plaintiff delivered to him the cashier's check in question, but, on the contrary, in open court admitted that he received it at his law office on May 23, 1942, along with plaintiff's written proposal. The record also shows that defendant, as a witness, stated: "I am a lawyer of this city," referring, of course, to the City of St. Louis.

Plaintiff's exhibit No. 3, a letter from Joseph Boxerman, plaintiff's attorney, dated July 28, 1942, which defendant admitted he received, was addressed to the administrator "Boatmen's Bank Building, St. Louis, Missouri." Defendant himself gave testimony showing that most of the discussions were had at his law office which, as shown by

plaintiff's exhibit 3, *supra,* was in the Boatmen's Bank Building in St. Louis, Missouri.

Defendant also admitted in open court that he had given a forthcoming bond whereby he retained possession of the cashier's check. He further admitted that after taking up the matter with Judge Arnold of the Probate Court of the City of St. Louis, where the estate involved herein was pending, and receiving the judge's approval, he endorsed the cashier's check to the United States Fidelity and Guaranty Company as security to that company for its execution of the forthcoming bond as surety. The whole record shows clearly that the estate was, at all the times with which we are concerned, in process of administration in the Probate Court of the City of St. Louis.

We think the evidence was sufficient to show that the cashier's check was in possession of the defendant administrator in the City of St. Louis, Missouri, at the time this suit was begun. While it is true that consent of parties cannot give jurisdiction, nevertheless, parties may admit the existence of facts which show jurisdiction, and courts may act judicially on such admissions and their action will be binding and effective. [Hadley v. Bernero, 103 Mo. App. 549, 558, 78 S. W. 64.] We hold that the circuit court had jurisdiction to hear and determine the cause.

As to the merits of the case, we think the document submitted by plaintiff to defendant was after all only a proposal. It never did develop into a binding contract notwithstanding defendant's acceptance thereof. The record shows that the leasehold proposed to be transferred had an unexpired term of more than three years and if subject to sale for the payment of debts or legacies, then, if and when sold, the law required that it be sold as real estate is sold by an administrator, under an order of the probate court, after compliance with Sections 141, 142, 143 and 144, Revised Statutes of Missouri, 1939, which provide in detail the various steps which must be taken by an administrator in the sale of real estate of a decedent. See also Section 1337, Revised Statutes of Missouri, 1939 (Mo. R. S. A., sec. 1337), which provides that a lease on lands for an unexpired term of three or more years is subject to execution and sale as real property. An administrator has no authority to make a sale or to enter into a contract for the sale of a leasehold for a term longer than three years without having first complied with the requirements of said statutes and procuring the issuance of an order of sale by the probate court after a hearing and the taking of testimony, as required by Section 144, Revised Statutes of Missouri, 1939, *supra.* [Orchard v. Wright-Dalton-Bell-Anchor Store Co. et al., 225 Mo. 414, 462, 463, 125 S. W. 486.]

Even if the leasehold in question could be sold by the administrator as personal property, any purported transfer thereof at private sale without having first procured an order of the probate court for such

private sale and prescribing the terms thereof, as required by Section 116, Revised Statutes of Missouri, 1939 (Mo. R. S. A., sec. 116), would be null and void.

The Orchard case, referred to above, was an action in ejectment for the possession of real estate. Saracini was the name of the decedent therein who was lessee in a twenty-year leasehold of the property described in the petition. His widow, after having begun administration of his estate as executrix, was removed and the public administrator took charge of the estate under an order of the court. On his petition, the probate court made an order directing the sale of the leasehold, but the order did not recite whether the sale was to be a private or public sale, and did not prescribe the terms of sale. The administrator made a sale of the leasehold under the order of the court. It was held by the Supreme Court that, even if the leasehold could be sold as personal property is sold by an administrator under the statutes, the sale was void for failure to comply with the statutes relating to the sale of personal property of a decedent, and that the court's order made after the sale, purporting to approve it, added nothing to its validity. The Supreme Court held also that the sale of a leasehold for more than three years can be made by an administrator only under the conditions and for the purpose and in the manner prescribed by the statutes for the sale of real estate of a deceased. The statutes referred to are now Sections 141, 142, 143, 144, 157, 161 and 162, Revised Statutes of Missouri, 1939. The court held further that, since none of the precedent steps commanded by said statutes had been taken, the attempted sale therein was void. [Orchard case, *supra.*]

Under the above-mentioned statutes and the decision in the Orchard case, the administrator in the case at bar was wholly without authority to enter into any contract for the sale of the leasehold involved herein. The purported contract under which he received the cashier's check from plaintiff could not have been approved by the probate court as said document stood at the time it was delivered, nor at any time since. It remained a mere proposal, and was, therefore, not a binding contract. The only way in which a binding contract for the sale of said leasehold could have been made was by first complying with the statutes above referred to. A summarized statement of the applicable rule based upon the decisions of many courts appears in 3 Woerner on American Law of Administration (3 Ed.), pp. 1654, 1655, sec. 477, as follows:

"In selling the real estate of a deceased person, the executor or administrator must act within the scope of his powers under the statute and according to the directions contained in the order of sale. . . . *Since he has no power to sell without order or decree of court, an agreement or bond made by him before obtaining such order to sell the land of the deceased is utterly void, incapable of being enforced in law or in equity.*" (Emphasis ours.)

From all of the foregoing, it seems clear that neither the administrator nor the estate was bound by the purported contract, which means that plaintiff also was not bound thereby, for it is well-established law that an executory contract is not effective to bind the parties unless there be mutuality of obligation. If one party is not bound, neither is the other party bound. [Great Eastern Oil Co. v. DeMert & Dougherty, 350 Mo. 535, 166 S. W. (2d) 490, 493; Reynolds v. South Side National Co. (Mo. App.), 64 S. W. (2d) 297; Jesse v. Rolaff (Mo. App.), 74 S. W. (2d) 890, 893.]

There being no valid binding contract in existence, plaintiff was entitled, upon his demand, to receive back from the defendant the $4000 cashier's check in question.

Defendant argues, however, that plaintiff's remedy, if he had any, was not to bring this action in replevin, but to sue in equity for rescission of the contract. We think the trial judge gave the correct answer to this contention when he said, in his memorandum in deciding the case, that inasmuch as no valid contract ever came into existence there was nothing to rescind.

The same answer is appropriate to the further contention of defendant to the effect that he was entitled to a reasonable time in which to present the matter to the probate court and to procure the approval of the contract, but that plaintiff repudiated the contract before such reasonable time elapsed. It cannot be said that plaintiff repudiated the contract when there was no valid contract to repudiate.

A mere reading of the various sections of the statutes which provide for the sale of the real property of a decedent shows the high degree of care that the Legislature intended should be exercised to safeguard the rights of all parties interested in such property. Unless said statutory requirements have been complied with, an administrator is without any authority either to sell or to contract to sell the real estate of a decedent. [Orchard v. Wright-Dalton-Bell-Anchor Store Co. et al., *supra.*]

Plaintiff-respondent urges that there was no reasonable ground for the appeal in this case and that ten per cent of the amount of the judgment should be added thereto as damages for vexatious appeal. It is pointed out by plaintiff that defendant, who is referred to as a careful, methodical lawyer of long experience, admitted on the witness stand that before the execution of the purported contract he had read the case of Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, to which we have referred herein, and had discussed it with plaintiff's counsel. From this it is argued that he must be held to have known that he was without authority to enter into any binding executory agreement for the sale of the leasehold involved herein, and that he was under a duty to return plaintiff's cashier's check upon demand; that when the case was decided by the trial court squarely in line with the Orchard case, as shown by that court's memo-

randum, the administrator nevertheless appealed to this court, raising in this court for the first time an alleged jurisdictional question without any merit and presenting no debatable or unsettled question. A number of cases are cited by plaintiff in support of this point, some of which were decided by this court in recent years. We are, therefore, familiar with the statute, Section 1230, Revised Statutes of Missouri, 1939 (Mo. R. S. A., section 1230), which provides for penalties for vexatious appeals and the cases construing and applying said statute. We think it would add nothing to the sum total of legal knowledge for us to discuss the statute and the cases cited because, in determining whether such a penalty should be allowed, each case must rest upon its own facts.

From a consideration of the whole record in this case, we do not believe we would be justified in assessing any penalty because of the appeal taken. We are not able to say that the record shows bad faith on the part of defendant in taking the appeal, or that the appeal was purely frivolous and vexatious, as charged by plaintiff. It must be remembered that the administrator was not acting as a private person in this matter. He was acting in a representative capacity, and because of that may have been impelled by his sense of duty to the estate to take the appeal in order that a court of last resort might pass upon the matter before yielding what he regarded as the rights of the estate which he represented. The request for the assessment of a penalty is therefore denied.

The judgment of the circuit court is affirmed. *Hughes, P. J.,* and *Anderson, J.,* concur.