Claude U. Stone, Trustee and Executor Under Will of Fannie G. Baldwin, Deceased, Plaintiff, v. Sidney Baldwin, Helen Baldwin Smith, Margaret Baldwin Holley et al., Defendants.

Helen Baldwin Smith et al., Petitioners-Appellants, v. Edwin V. Champion, Respondent-Appellee.

Gen. No. 10,591.

Opinion filed May 20, 1952. Rehearing denied June 11, 1952. Released for publication June 12, 1952.

CASSIDY & SLOAN, of Peoria, for appellants.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appellee.

HARRY E. WITHERELL, and CLARENCE W. HEYL, both of Peoria, for respondent-appellee; BAER, DAVIS & WITHERELL, and HEYL, ROYSTER & VOELKER, all of Peoria, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On February 7, 1931, Fannie G. Baldwin executed her will and, thereafter, on November 29, 1935, a codicil thereto which were duly admitted to probate by the probate court of Peoria county following her death in 1938. Claude U. Stone was appointed executor and administered her estate and was discharged as such executor on December 22, 1946. The will created a trust and named Claude U. Stone and another as trustee. The codicil revoked the appointment of the additional trustee and designated Claude U. Stone as sole trustee. Claude U. Stone accepted the trusteeship and continued to act as sole trustee under the direction of the circuit court of Peoria county until he resigned on June 17, 1949. At that time, Stone, acting under the provisions of the will creating the trust, designated George Z. Barnes successor trustee, and he, Barnes, qualified and acted as such sole trustee until his death on July 16, 1951.

The principal asset of the trust created by the will of Fannie G. Baldwin is 798 shares of the outstanding 940 shares of the capital stock of the Peoria Star Company which publishes the Peoria Star, a daily newspaper. Sidney Baldwin is a daughter of said Fannie G. Baldwin, deceased. Frank Baldwin was a son of said Fannie G. Baldwin, and he predeceased his mother, leaving Margaret and Helen, his daughters.

131

Margaret Baldwin thereafter married John M. Holley, and Helen Baldwin married Barton Smith, and they are the respective parents of Nancy Baldwin Holley, John Milton Holley, George Stockwood Holley, Stephanie Smith, Davidson Smith, Monica Smith, and Bennett P. Smith, all minors. Among other things, the will of Fannie G. Baldwin directed the trustee to pay to the daughter, Sidney Baldwin, during her lifetime, sixty per cent of all the net income from the trust estate, the same to be paid quarterly or "oftener if possible." The will also provided that upon the decease of said daughter, if she leaves surviving any child or descendant thereof, the same percentage of net income as directed to be paid to Sidney Baldwin shall be paid to her child, children or descendants *per stirpes.* It is then provided that if the daughter died without leaving surviving any child or descendant thereof, such portion of the net income shall be paid in equal proportions to the granddaughters of the testatrix, now Helen Baldwin Smith and Margaret Baldwin Holley, and their respective children, *per stirpes.* The remaining 40 per cent of the net income of the trust estate is to be paid to said granddaughters in equal proportions. Upon the death of either granddaughter leaving any child or children her surviving, her descendants divide such income *per stirpes.* Should both the granddaughters predecease the daughter, leaving no child or descendant thereof, then their portion of the income is to be paid to the said Sidney Baldwin during her lifetime.

The will further provided that in the event the daughter and two granddaughters of the testatrix should all die leaving surviving them no child or children or descendants thereof, then her trustee was directed to distribute the income from the trust estate to certain specified charities, and when the trust terminates, if there are no descendants of the daughter or

granddaughters then living, the corpus of the trust is to be distributed to these named charities. The trust was to continue for a period of twenty years after the death of the last survivor of the daughter, Sidney Baldwin, and her granddaughters, Helen Baldwin Smith and Margaret Baldwin Holley. At the expiration of the period, the trust estate was to be distributed to the descendants of the two granddaughters *per stirpes,* if there were any and, if not, then to certain charities. The testatrix stated that her purpose in continuing the trust for such period was that ''I most ardently desire the newspaper known as the Peoria Star, which constitutes the greater part of the property that will come to this trust estate, to be and remain strictly a Peoria institution controlled at all times by Peorians for as long a period as it is possible for me to fix under the law.''

Following the death of George Z. Barnes, successor trustee and on July 20, 1951, Sidney Baldwin filed her petition in the circuit court of Peoria county suggesting the appointment of the Central National Bank and Trust Company of Peoria as successor trustee. On July 26, 1951, Helen Baldwin Smith, Margaret Baldwin Holley, Nancy Baldwin Holley, John Milton Holley, George Lockwood Holley, Stephanie Smith, Davidson Smith, Monica Smith, and Bennett P. Smith filed their petition in said proceeding requesting that Lawrence A. Welch, John M. Holley, husband of Margaret Baldwin Holley, and Barton Smith, husband of Helen Baldwin Smith, be appointed successor co-trustees. On July 29, 1951, Claude U. Stone executed a written instrument, which he filed with the Recorder of Deeds of Peoria county, in which he nominated Edwin V. Champion as trustee, and on July 30, 1951, Stone filed his petition in the circuit court in this proceeding asking that the court confirm that appointment and fix the terms and amount of the bond to be given by the suc-

cessor trustee. Motions by the several beneficiaries were filed to strike the petition of Stone on the ground that Stone had exhausted his power of appointment under the will of Fannie G. Baldwin when he appointed George Z. Barnes as his successor trustee. Stone answered the petitions of Sidney Baldwin and the other beneficiaries averring that he had the power to appoint all successor trustees and suggesting that the prayers of those petitions be denied inasmuch as he had appointed Edwin V. Champion as successor trustee. The circuit court, on October 10, 1951, after a hearing, entered an order finding that Stone had no power to appoint another successor trustee and that his purported appointment of Champion was null and void and sustained the several motions of the respective beneficiaries to strike the Stone petition and it was dismissed and that order is not involved in this appeal.

An extensive hearing was had in the circuit court upon the several petitions of the various beneficiaries for the appointment of a successor trustee or trustees. At that hearing, the beneficiaries were present and represented by counsel and, at the conclusion of the hearing, the chancellor took the matter under advisement and on December 13, 1951, entered an order appointing Lawrence A. Welch and Edwin V. Champion co-trustees, fixed the amount of their bond at $75,000, and directed that upon their filing a written acceptance of the trust and upon the approval of their bond, said trustees should enter upon the discharge of their duties as such co-trustees. Thereafter written acceptances of the trust were filed by Champion and Welch, together with their bond, as provided in the order of December 13, 1951, and on December 24, 1951, an order was entered so finding and approving the bond of these trustees. Margaret Baldwin Holley, Helen Baldwin Smith, and Patrick F. Crowley, guardian *ad litem* for the minor children and trustee for the unborn heirs,

134

prosecute this appeal to reverse that portion of the order appointing Edwin V. Champion co-trustee.

Upon the hearing before the chancellor, John M. Holley testified that his wife is thirty-three years of age and that they have three minor children and make their home in Roswell, New Mexico; that Mrs. Holley has not lived in Peoria since she was a very young girl; that he and his wife had made an extensive investigation and had determined that Lawrence A. Welch was familiar with the Peoria Star and its management; that he, Welch, enjoyed a most excellent reputation and that they were satisfied that he was highly qualified to act as a trustee; that they objected to the Central National Bank of Peoria being appointed trustee because they were of the opinion that a natural person was better qualified to look after the interests of this trust and that the trust would get more thorough and unselfish attention and consideration by an individual trustee than by a corporate trustee. Barton K. Smith testified that he was the husband of Helen Baldwin Smith and that he and his wife and four children live in Wilmette, Illinois; that there was a lack of cordiality between Mrs. Smith, Mrs. Holley, and Sidney Baldwin, and that Sidney Baldwin declined to cooperate in any way with Mrs. Holley and Mrs. Smith, and that they had been unable to reach any understanding with reference to the appointment of a trustee. Both Mr. Holley and Mr. Smith testified they would accept an appointment as trustee and would serve without compensation.

The record discloses that Lawrence A. Welch is fifty-five years of age and has been a resident of Peoria for twenty-two years. In March, 1950, he became vice-president of the Peoria Star, is familiar with its operation, and in July 1951, became president and manager. He had been vice-president of the board of directors of Peoria Newspapers, Inc., and the representative of the Star on that board and, following the death of

135

Mr. Barnes, became chairman of that board of directors and is a director of the Commercial National Bank of Peoria. He is one of the outstanding business men of Peoria, whose reputation for integrity, independence, and courage is unsurpassed, and he enjoys the confidence, respect, and esteem of those who know him. He was suggested by appellants for appointment as a co-trustee, and Sidney Baldwin is satisfied with his appointment. We can well understand why his appointment by the chancellor was acceptable to all interested parties.

Counsel for appellants call our attention to the fact that from the time of the death of the testatrix in 1938 until this appointment of Welch and Champion as co-trustees was made in 1951, this trust was administered by one trustee; that the sole asset of this trust is a majority of the capital stock of the Peoria Star Company; that the duties devolving upon the trustee are relatively simple and consist of voting the stock at the annual meeting of the corporation for the election of directors and to receive and distribute dividends when paid. Counsel argue that there are no duties other than these and the making out and filing income tax returns. Counsel state that they do not contend that the chancellor, under his general equity powers, could not appoint more than one trustee, but insist that in the absence of evidence showing a clear need for a different number of trustees, the chancellor should have appointed a sole trustee.

Here then, we have this situation: Sidney Baldwin, one of the beneficiaries, had suggested to the court the appointment of a corporate trustee. The other two adult beneficiaries opposed such an appointment. Sidney Baldwin, who suggested the appointment of a corporate trustee, was represented by separate counsel in the trial court and in this court and has filed her brief in which she states that her purpose in so doing

136

is to advise the court that she has not appealed and has no objection to the decision of the chancellor and has never questioned the integrity, ability, or qualifications of Edwin V. Champion and agrees with the findings of the chancellor that Mr. Champion ''has all the qualifications that should make him a good trustee.'' Appellants, who opposed the appointment of a corporate trustee, suggested the appointment of three individual trustees and now insist (since the chancellor appointed two individuals to act as co-trustees) that one trustee can perform the duties of trustee better than two and that any number of trustees more than one will be a burden and an unwarranted expense to the trust.

It is true that the testatrix designated a sole trustee, but she also provided for the appointment of a successor trustee, or trustees, in the event of Mr. Stone's death or resignation. Mr. Stone was expressly given the power to appoint a trustee or trustees if he resigned. The record shows that on May 17, 1943, Mr. Stone invoked the jurisdiction of the circuit court of Peoria county in connection with the administration of this trust, and the chancellor who entered the order from which this appeal is prosecuted is and has been familiar with this trust and its operation from that time. After giving the matter of the appointment of a successor trustee or trustees his considered judgment, the chancellor entered the order appointing Mr. Welch and Mr. Champion trustees and this order recited: ''In evaluating the various recommendations as made, it seems entirely proper to me that such direction as is contained in the language employed by the creator of this trust should be accorded that consideration to which it is entitled, and a resort to the Will of the late Fannie G. Baldwin discloses therein, among other language, the following: 'My object and purpose in continuing this trust for the period indicated is for the reason I most ardently desire the newspaper known

137

as the Peoria Star, which constitutes the greater part of the property that will come to this trust estate, to be and remain strictly a Peoria institution controlled at all times by Peorians for as long a period as it is possible for me to fix under the law.' I do not find any language in the will or codicil of Mrs. Baldwin that would indicate any desire on her part that a corporate trustee should administer this trust in whole or in part. I find that the duties and responsibilities incident to the carrying out of this trust are of such magnitude that, in my opinion, one person should not be asked to assume a responsibility of such proportions. I therefore find that it is to the best interests of this trust and of each and every party interested therein that this trust should be administered by individual co-trustees. I further find that the individuals designated by this order as co-trustees of this trust are men of ability and of the highest integrity, and that they are abundantly qualified to discharge the duties of co-trustees of this trust, and that it is to the best interests of the trust and of each and every party interested therein that they be appointed.''

██ The instrument creating this trust provided for the appointment of a successor or successors to Mr. Stone under two different sets of circumstances. First, in the event of the death of Stone without Stone having previously named his successor and, second, in the event of Stone's resignation. In the event of his death without having previously named his successor, the sitting judges of the circuit court of Peoria county were authorized to fill the vacancy. In the event of Stone's resignation, he, Stone, was given the power to select and appoint his successor. In both events, the will provided that the appointing power should have the right to appoint ''a suitable person or persons'' to fill the vacancy. The appointment challenged by this appeal was not made under either of

these provisions but was made by the chancellor under his inherent equity powers. All the authorities are to the effect that in making appointments of this character the chancellor exercises a very broad and a very wide discretion.

 The jurisdiction of a court of equity to appoint trustees, as one phase of its jurisdiction over trusts, extends to the appointment of successor trustees (54 Am. Jur. Trusts, sec. 134, p. 114). In making such appointments the chancellor, on a petition to appoint one trustee, may appoint another, may appoint a trust company in place of an individual trustee, or may appoint a sole trustee instead of several trustees, or may appoint several trustees in place of one or otherwise increase or decrease the number of trustees (Bogert Trusts and Trustees, Vol. 3, sec. 532, and cases cited). In *Steger v. Northen,* 229 Ill. App. 529, at pages 539, 540, the court quotes from 39 Cyc. 283 to the effect that the appointment of a fit and proper person to be a new trustee is a matter largely within the discretion of the court. The discretion, however, is not an arbitrary one but is subject to well known and clearly defined rules.

 There is nothing in the instrument creating this trust which precluded the chancellor from appointing co-trustees. Insofar as Fannie G. Baldwin expressed any intention on the question of whether one or more trustees should serve after Claude U. Stone had ceased to act, she expressed herself in favor of either a sole trustee or co-trustees and, in our opinion, the chancellor did not do violence to any of the expressed desires of the testatrix by appointing two trustees, nor did he abuse his discretion in either refusing to appoint a corporate trustee or in refusing to appoint a sole trustee. Nor do we think his findings that ''the duties and responsibilities incident to the carrying out of this trust are of such magnitude that

one person should not be asked to assume a responsibility of such proportions and that it is for the best interests of the trust and the beneficiaries that the trust be administered by individual co-trustees'' are not supported by the record. The responsibility of determining whether there should be appointed a sole successor trustee, a corporate trustee, or an individual trustee, or whether there should be more than one trustee was for the chancellor to determine in the exercise of a sound judicial discretion, and we are not inclined to disturb his finding that individual co-trustees should administer this trust.

The important question presented by this appeal, however, is whether the chancellor was warranted in appointing Edwin V. Champion co-trustee with Mr. Welch. To answer this question we must examine the record in order to ascertain just what Mr. Champion's connection with the case has been.

On June 4, 1949, appellants filed in this proceeding a petition alleging that the will of Fannie G. Baldwin provided that before the trustee should enter upon his duties as trustee he should give bond in such amount and in such form as shall be fixed and approved by one of the judges of the circuit court of Peoria county and shall file with the circuit court of Peoria county, at least once a year, a full and complete report of his acts and doings in connection with said trust estate. The petition then alleged that Claude U. Stone, the then trustee, had not given a bond or filed reports as so provided and prayed for his removal as trustee and for the appointment of a new trustee. This petition was set for hearing for June 17, 1949. On that day Mr. Champion entered his appearance for Mr. Stone and thereafter filed an answer on behalf of Stone admitting that he had not filed a bond as trustee and stated that he had paid himself for services as trustee $12,300. On June 17, 1949, the resignation of Stone as trustee

140

and the appointment by him of George Z. Barnes, as successor trustee, was filed in the office of the Recorder of Deeds of Peoria county. Following this resignation, Mr. Champion on behalf of his client, Stone, requested and obtained from the court additional time in which to file a final report and audit of Stone's accounts. On August 1, 1949, Stone, by his attorney, Mr. Champion, filed his final report as trustee to which appellants filed objections. Extensive hearings were had at which Mr. Champion testified, and it was not until July 31, 1951, that an order was entered approving Stone's final report and awarding him $10,923.75 additional fees as trustee. From that order an appeal was perfected to this court, and the appellants in that case are the appellants in the instant case. An opinion in that case is filed this day. (*Stone v. Baldwin,* Gen. No. 10576.) We take judicial knowledge of the record in that case. (*Blyman v. Shelby Loan and Trust Co.,* 382 Ill. 415, 419; *In re O'Malley,* 404 Ill. 257.)

On December 19, 1951, Mr. Champion notified his client that he could no longer represent him and on December 24, 1951, Mr. Champion announced his withdrawal as attorney for Mr. Stone in open court and personally informed counsel for appellants of his withdrawal. Due to the fact that Mr. Champion was absent from the State from December 25, 1951, until January 14, 1952, his formal withdrawal as counsel for Stone was not made a matter of record in the circuit court until January 22, 1952.

As heretofore stated, on July 29, 1951 (after Mr. Barnes' death and after Mr. Champion had entered himself as attorney for Stone), there was filed in the office of the Recorder of Deeds of Peoria county a written instrument, executed by Stone, in which he nominated Champion as trustee, and on the following day Stone filed his petition in the circuit court requesting the court to confirm that appointment. At the

141

same time Mr. Champion filed his petition in which he stated that he had been advised of this nomination as trustee; that he was willing to accept the trust and requested the court to confirm him as trustee and fix the amount of his bond.

In *Waller v. Hosford,* 152 Iowa 176, 130 N. W. 1093, it appeared that Richard Waller died in 1888 leaving him surviving three children and two grandchildren, J. Robert Waller and Sidonia M. Cholbin, children of a deceased son, Simon Waller, him surviving. By his will Waller devised and bequeathed all his property to his three children, Robert Waller, Mary E. Kemler, and Sidonia Hosford as trustees. Mrs. Kemler and Mrs. Hosford were authorized by the will to appoint attorneys in fact to transact the business of the trust in their stead, and they appointed their respective husbands, A. W. Kemler and A. W. Hosford, who managed the estate until the death of A. W. Kemler in 1895. Robert Waller did not participate in the management of the trust. In March 1899, Mrs. Kemler appointed her son and daughter, R. W. Kemler and J. E. Kemler, to act in her stead. Robert Waller, son of the testator, died on September 23, 1899, and in May 1900, Mrs. Hosford and Mrs. Kemler appointed Frank B. Hoffman to succeed him as trustee. In 1902 A. W. Hosford resigned as attorney in fact and at the same time one Slocum was appointed attorney in fact and in his stead but he resigned shortly thereafter and Mrs. Hosford made no further appointment. In 1903 the children of said Simon Waller, deceased, and the children of Robert Waller, deceased, who were entitled to one-half of the income from the trust and, on distribution, entitled to a like proportion of the trust fund, filed their complaint in the district court seeking to compel the defendants, as trustees, to file a report, to remove them as trustees, and for the appointment of other trustees in their stead. The district court removed the trustees

and appointed other trustees, among them being an attorney representing Mrs. Hosford. The Supreme Court of Iowa, after reviewing the record, found that the evidence was not such as to warrant the removal of Mrs. Kemler because of the inefficiency of her attorneys in fact but held that the trial court was warranted in removing Hoffman and Mrs. Hosford. In denying a petition for rehearing, the court (*Waller v. Hosford,* 132 N. W. 426) said: "The parties hereto agree in argument on re-hearing that one of the trustees appointed by the district court had been the attorney for Mrs. Hosford and as attorney for defendant in this action. Owing to such relationship to the trustees removed and against whom the trustees designated by the court may deem it necessary to institute proceedings for the protection of the estate, we are of the opinion that Mrs. Kemler should continue as trustee, instead of such attorney, in connection with the other two trustees appointed by the district court, save as modified by this direction."

In *Steger v. Northen,* 229 Ill. App. 529, the court, at page 539, cited *In re Tempest,* L. R. 1, Ch. 485, and stated that in that case three rules are mentioned which should govern the court in appointing a new trustee: first, the wishes of the creator of the trust should be regarded; second, the court will not appoint a person to be a trustee in opposition either to the wishes of the testator or to the interests of the beneficiaries; and, third, the court will have regard to the question whether the appointment will promote or impede the execution of the trust. To the same effect is the comment in section 108, Restatement of the Laws of Trusts, where it is said: "The court in exercising its discretion in appointing a new trustee will have regard to (1) the intention of the settlor; (2) the interests and wishes of the various beneficiaries; and (3) the promotion of the proper administration of the trust."

In *In re Lane's Will,* 11 Del. Ch. 122, 97 Atl. 587, it appeared that the chancellor appointed a successor trustee and ordered it to take and receive all the trust securities and to take such proceedings against the former surviving trustee and against the estate of the deceased trustee as was necessary to protect the trust estate. Thereupon, the successor trustee filed a petition in the court where the trust was being administered seeking to surcharge the former trustees with losses arising from their improper investments. The court held that in proceedings by a trustee to recover trust property, or to recover for breaches of trust by former trustees, the beneficiaries of the trust are not necessary parties, and then went on to say: "It is true also that though a successor in a trust is not accountable or liable for the defaults or misconduct of his predecessor, yet he must obtain all the property that belongs to the trust, and for this purpose should investigate the acts and conduct of his predecessor and recover from him whatever belongs to the trust estate."

In *In re Luckenbach's Will,* 42 N. Y. S. (2d) 483, there was an application by adult remaindermen for the appointment of a trustee to succeed Edgar F. Luckenbach who had been sole trustee of a trust created by the will of his father. Edgar F. Luckenbach died in 1943, and his will requested the appointment of his attorney as successor trustee of the trust created by the will of his father. In the course of its opinion, the court said such designation by the will of the son was not binding upon the court inasmuch as there was no provision in the will of the father authorizing such designation. The court then said: "Although this court has full confidence in the personal integrity and honesty of such nominated executor and trustee, it feels that it would be to the best interests of the estate to appoint an independent person as successor trustee."

In *In Re Moorhouse,* 4 D. L. R. 542, it appeared that Walter Hoare Moorhouse died testate on or about October 24, 1921. His will, which appointed Mary Elizabeth Butler Moorhouse and a trust company executors, was duly admitted to probate, and thereafter Mrs. Moorhouse filed her application for an order discharging her as one of the executors and trustees and appointing in her place and stead Eric G. Moorhouse. In dismissing the application, the court stated that the application is misconceived so far as the executorship is concerned because the surrogate court is the proper court to appoint and discharge executors and that the matter would be dealt with by the court only insofar as the trusteeship is concerned. The court then stated that Mary Elizabeth Butler Moorhouse is the life tenant, ninety years of age, and that upon her death the trust would be distributed; that the petition only asks that she, the petitioner, be discharged if Eric G. Moorhouse is appointed in her place, if not, she desired to continue to serve as trustee. After citing and setting forth certain sections of The Trustee Act of 1937, the court held that where there is a continuing trustee, and a trustee wishes to retire, he must do so unconditionally, and that Mary Elizabeth Butler Moorhouse had no power to appoint Eric G. Moorhouse a trustee in her place and, furthermore, that she ought not to be permitted to hamper the court in its discretion by attempting to dictate whom the court should appoint. The court then continued: "Furthermore Eric G. Moorhouse is the personal solicitor of Mary Elizabeth Butler Moorhouse who is now a trustee and the life tenant. If he were to be appointed trustee, it may very well be that his interest as trustee and his interest as solicitor for the life tenant would come in conflict. For this reason alone he ought not to be appointed: Re Kemps Settled Estates (1883), Ch. Ch. D,

485; Lewin on Trusts, 14 ed., p. 445; and Re Norris, Allen v. Norris (1884), 27 Ch. D. 333.''

■ In the instant case, the fact that the chancellor had under consideration the appointment of Mr. Champion as co-trustee was not known to any of the beneficiaries of this trust until the appointment was announced by the chancellor on December 13, 1951. It is true that Mr. Stone had nominated Mr. Champion as his successor, but that nomination was not binding upon the chancellor and the chancellor had so determined. Upon the hearing of the petitions of the several beneficiaries suggesting whom the court should appoint, Mr. Champion was not mentioned. The evidence did disclose that the beneficiaries were unable to agree as to who should be appointed. After reading the record, we are convinced that the testimony of Burton K. Smith to the effect that Sidney Baldwin would not cooperate with her nieces and that there is a lack of cordiality between the beneficiaries is an understatement of the character of the relationship existing between Mrs. Smith, Mrs. Holley, and their aunt, Sidney Baldwin.

Counsel for appellee argue that inasmuch as the record shows that the beneficiaries were not in harmony and were plainly at odds as to whom the chancellor should appoint successor trustee, it became incumbent upon the chancellor to appoint a fit, proper, and disinterested person. Counsel state that they know of no other individual who would have a more complete and thorough knowledge of the ability, integrity, and qualifications of Mr. Champion to administer this trust than the chancellor before whom Mr. Champion had practiced his profession for many years and insist that the finding of the chancellor that Mr. Champion is a suitable person is conclusive. Counsel for appellee insist that by this appeal appellants are seeking to remove a trustee who was regularly and properly

146

appointed; that inasmuch as appellants made no motion to vacate the order of December 13, 1951, appointing Mr. Champion, they are now urging in this court a proposition not advanced in the circuit court and are estopped from so doing.

There is no merit in this contention. This order of December 13, 1951, was a final order. It was entered after the chancellor had heard the evidence offered by the respective parties in support of their suggestions and after he had given the appointment of successor trustees his considered judgment. The chancellor was not required to confine his appointment of a successor trustee to the parties suggested by the beneficiaries. In making the appointment, the chancellor undoubtedly considered all the factors bearing on the matter, such as the interests of the estate, the different classes of beneficiaries, the rights of the parties, the suitability of the suggested trustees and the expressed preferences of the beneficiaries and others interested. (65 C. J. Trusts, sec. 383, p. 594.) Inasmuch, however, as no one had nominated Mr. Champion and his appointment had not been suggested by anyone during the course of the hearing, his designation by the chancellor on December 13, 1951, had the effect of depriving appellants of their right to be heard upon the question of the selection of a trustee. We are not unmindful of the fact that the record shows that on July 30, 1951, the day preceding the announcement by the chancellor of his findings and conclusions in the branch of this litigation having to do with Stone's final report as trustee and the allowance to him of additional fees, Mr. Champion filed a petition in which he accepted Mr. Stone's appointment of him as sole successor trustee.

As a co-trustee, Mr. Champion is an appellee in *Stone v. Baldwin,* General No. 10576, pending in this court. In the lower court he represented the sole trus-

tee and had represented him since June, 1949, and so continued to represent him after the appeal in General No. 10576 was perfected and after the appeal in this branch of the case was perfected. Appellants insisted in the lower court and are contending in this court in General No. 10576 that Stone's claim for compensation as trustee, amounting to $10,923.75, was unwarranted and that he should be required to refund to the trust $12,300 which he had paid himself for fees and expenses while acting as trustee and the further sum of $165,404.80 which he received from Peoria Newspapers, Inc. In our opinion, the interests of the trust and all the beneficiaries can best be served by a trustee who has had no adverse connections with the trust or its beneficiaries at any time.

 While the successor co-trustees did not appeal from the order of July 31, 1951, under the authorities it is the duty of successor trustees to investigate the acts and conduct of their predecessor trustee and recover or obtain from such trustee whatever belongs to the trust. In order to discharge his obligation to this trust, Mr. Champion, as co-trustee, might be required to oppose the affirmance of the order of July 31, 1951, which he was instrumental in procuring for his client, the former trustee. Neither the order of the chancellor nor the findings of this court upon the matters in issue in General No. 10576 may be said to be final or conclusive.

This court has full confidence in the integrity, honesty, and ability of Mr. Champion. From a consideration of the record in this case and the record in *Stone v. Baldwin,* General No. 10576, we feel that it would be for the best interest of this trust if the chancellor would appoint some suitable, disinterested party who has had no connection with these cases in any way to serve with Mr. Welch as co-trustee.

 Solely because of the relationship of attorney and client which existed between Mr. Champion and

Mr. Stone prior to Mr. Champion's appointment as co-trustee, it is the considered judgment of this court that the portion of the order appealed from which appointed Edwin V. Champion co-trustee with Lawrence V. Welch be reversed and the cause remanded to the circuit court of Peoria county with directions to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*