In the Matter of the Trust Under the Last WILL and Testament of Andrew JACKSON, Deceased.

No. 7488.

Springfield Court of Appeals.

Missouri.

May 17, 1956.

Esco V. Kell, West Plains, for appellant.

H. D. Green, Green & Green, Robert E. Hogan, Hogan & Hogan, West Plains, for respondent.

RUARK, Judge.

This is an appeal from an order over-ruling appellant's motion to vacate a previous order of the circuit court appointing a substitute testamentary trustee.

*Does this court have jurisdiction?* Appellant has challenged such both on the ground that title to real estate is involved and that the amount in dispute exceeds $7,500.

■ As to whether title to real estate is involved in the constitutional sense: It is not in dispute that under the will here involved the legal title goes to trustees to hold for the use and benefit of certain beneficiaries. For so long as proper under the will, the bare legal title will remain in those persons who are lawfully appointed by the court to administer the trust, whether they be the appellant, respondent or other persons. There is no dispute as to this. The essence of the question here is not as to the flow and lodging of the title, but as to whether a certain person shall be one of the cotrustees. Under our Supreme Court decisions the judgment sought or rendered must be such as will *directly determine* title in some manner or degree adversely to one of the litigants. It is not enough that the judgment, when carried into execution, will *affect* the title. The title itself must be the matter about which there is a contest. It must not only be in issue, but it must be directly in issue. The judgment must adjudicate a title controversy.[1] Thus it is held that a suit to enjoin trustees in reference to the handling of real estate on the ground that they were not the properly elected trustees vested jurisdiction in the court of appeals, because "since the only dispute is as to who are the trustees of the church, the plaintiffs or the intervenors, the title to the property of the church is not only not involved but will not be affected by any judgment responsive to the issues presented." Clevenger v. McAfee, Mo.Sup., 165 S.W.2d 411; see State ex rel. and to use of Northside Church of God v. Church of God, Mo.Sup., 243 S.W.2d 308.

■ As to whether the amount in dispute exceeds $7,500: The pleadings and exhibits show (or contend) there is real and personal property in the estate to the extent of more than $40,000. But the test again is not the amount which may be *affected,* but the amount *actually involved* in the suit. This is not a suit for money award but one which concerns only the authority to handle (not to beneficially own) that amount. The Supreme Court is of limited appellate jurisdiction, and such jurisdiction must affirmatively appear in the record. The mere chance or speculation that the jurisdictional amount may eexceed $7,500 is not enough.[2] The test is the value in money of that which will be gained or lost by either of the parties as a result of the litigation.[3] In arriving at such value it is held that the amount actually involved in a suit to appoint or remove an executor is not the value of the estate, but the value of the commissions which will be received (or lost) by the occupant of that position.[4] In this case there is nothing in the pleadings or the record which claims or indicates with fair certainty that the fees or commissions involved will exceed $7500.

1. Nettleton Bank v. McGaughey's Estate, 318 Mo. 948, 2 S.W.2d 771; Oehler v. Philpott, Mo.Sup., 253 S.W.2d 179; Pursley v. Pursley, Mo.Sup., 213 S.W.2d 291; Mack v. Mack, Mo.Sup., 281 S.W.2d 872; First National Bank of Kansas City v. Schaake, 355 Mo. 1196, 200 S.W.2d 326.

2. Cotton v. Iowa Mutual Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246; State ex rel. Burcham v. Drainage Dist. No. 25, Mo.Sup., 271 S.W.2d 525; State ex rel. State Highway Commission v. Schade, Mo.Sup., 265 S.W.2d 383.

3. Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 4 S.W.2d 776, 783; Jackson v. Merz, 358 Mo. 1212, 219 S.W.2d 320; Cooper v. School Dist. of Kansas City, 362 Mo. 49, 239 S.W.2d 509.

4. In re Wilson's Estate, 320 Mo. 975, 8 S.W.2d 973; In re Christian Brinkop Real Estate Co., Mo.App., 215 S.W.2d 70; see Menzi v. White, 360 Mo. 319, 228 S.W.2d 700, 17 A.L.R.2d 796; see Simmons v. Friday, 359 Mo. 812, 224 S.W.2d 90.

■ For the foregoing reasons we retain jurisdiction.

*Is the appeal too late?* Respondent has moved to dismiss because of such contention. The motion to set aside the appointment was overruled on June 28, 1955. On July 8, 1955, appellant filed a motion for new trial, which motion was overruled on August 23, 1955, and notice of appeal was given seven days thereafter. Section 512.-020 RSMo 1949, V.A.M.S., Laws of 1943, sec. 126, p. 353, provides for appeal from any order granting a new trial, from certain designated orders and interlocutory judgments which determine the rights of the parties, from any final judgment, or from *any special order after final judgment in the cause.* 42 V.A.M.S. Supreme Court Rule 3.24 provides that the filing of motion for new trial postpones the finality of judgment until ruled upon or ninety days have expired, but concludes with the sentence, "When an appeal is taken from any order specified in Section 126, it shall be taken within ten days after such order is entered." Respondent argues that the motion to vacate a judgment is a special order after final judgment; and as the Supreme Court by its rule gave postponement of finality as to judgments generally, so hath it taken it away as to orders after judgment. The question in a nutshell is whether or not the filing of a motion for new trial postponed the finality, as a judgment, of the order overruling the motion to vacate.

■ As a theoretical proposition we accord respondent's motion and suggestions in support thereof considerable respect. But we are drawn to the conclusion that the order overruling the motion to set aside the judgment is *in itself* a judgment which is intended to receive the grace of postponement of finality by motion for new trial under Rule 3.24.

In Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55, the court, in a per curiam opinion, at loc. cit. 63 attempted to remove the uncertainty in regard to the effect of motions for new trial. It said, 200 S.W.2d loc. cit. 64:

"(T)here can be no doubt that a motion for a new trial is an authorized motion *in any kind of case,* and has the same effect to postpone the finality of the judgment *in any case,* because under the new code it performs not only all of its former functions as a motion for new trial but also those of all former record proper motions as well." (Our emphasis.)

and again:

"Undoubtedly this was the purpose of the new code, and Rule 3.24 construing it, in order to avoid the confusing situation prevailing under the old procedure, which caused parties to lose rights of appeal because a motion for new trial had the effect to postpone the finality of the judgment in some types of cases while such a motion had no function or effect at all in others."

In re Franz' Estate, 359 Mo. 362, 221 S.W. 2d 739, loc. cit. 740, it is pointed out that a motion for new trial in a record proper case is simply a motion which permits the court to reconsider its decision.[5]

■ It is true that a motion for new trial (although sometimes filed[6]) is not *necessary* to preserve the error in an order overruling a motion to set aside a judgment for irregularity patent on the face of the record;[7] whereas it would appear that the motion for new trial is necessary to preserve the error on the overruling of a motion in the nature of writ of error coram nobis because such involves evi-

5. See also Carr, Missouri Civil Procedure, sec. 859, p. 44.

6. Harrison v. Slaton, Mo.Sup., 49, S.W.2d 31, 34; see Cross v. Greenaway, 347 Mo. 1103, 152 S.W.2d 43, 44.

7. Scott v. Rees, 300 Mo. 123, 253 S.W. 998; Cannon v. Nikles, 235 Mo.App. 1094, 151 S.W.2d 472; Arndt v. Arndt, 177 Mo.App. 420, 163 S.W. 282, and cases cited; Hemm v. Juede, 153 Mo.App. 259, 133 S.W. 620.

dence dehors the record.[8] And it is true that rulings on motions to vacate for irregularity, both patent on the face of the record and in the nature of coram nobis, have sometimes been designated " 'special order after final judgment' ";[9] yet a motion to vacate makes a direct attack upon the judgment and is an *independent proceeding,* instituted by motion instead of a petition. Such motion takes the place of a petition and becomes a pleading from which the issues are gauged.[10] Thus the proceeding assumes the dignity of a separate lawsuit, and denial of the motion constitutes a final judgment in itself.[11] To this extent it is distinguishable from those after-judgment orders which are only adjunct to the case which has been determined or which seek to aid or impede the enforcement of a judgment rather than attack its very existence.[12] Since the proceeding has become a "case" and the motion for new trial is now an authorized motion in any kind of case we are of the opinion that the finality of the judgment was postponed and the appeal was in time. The motion to dismiss is overruled.

Andrew Jackson, of West Plains, Missouri, left a will wherein, after making certain specific bequests, he gave the remainder of his estate, both real and personal, to William Rudolph Luna and A. W. Landis as trustees (with full management powers), to pay the income unto William Rudolph Luna (his ex-son-in-law) and Irene Lummis (his adopted daughter), share and share alike, said payments to continue through the lives of the beneficiaries; upon death of the survivor the trust to terminate and the whole of the corpus to Charles and Mary Frances Jackson, a nephew and niece. The trustees were required to give bond and make annual settlement with the circuit court. In event the trustee Luna should die or disqualify, then trustee Landis would continue as sole trustee; but in event trustee Landis should die or disqualify, a trustee should be appointed by the circuit court. Landis and Luna were likewise named as executors. A codicil revoked a specific devise to the daughter, Irene. A later codicil provided for cancellation of benefits to said daughter in event she should contest the will. Said will and codicil were admitted to probate on March 4, 1952, and Landis and Luna qualified as executors and proceeded to administer the estate.

On May 1, 1953, Irene Lummis, one of the beneficiaries, filed in the circuit court her "petition for appointment of successor trustee and to require trustee to give bond." Such motion recited the fact that Landis had notified movant he was no longer acting as trustee, called attention to the requirement in respect to bond, and concluded with a prayer for the appointment of a successor to trustee Landis, and that the trustees be ordered to give bond and be removed in event of failure so to do. On May 14, 1953, trustee Luna filed answer to this motion wherein he alleged that Landis had not yet resigned but was still discharging the duties of trustee, and concluded with a statement that "unless it is the desire of A. W. Landis, trustee aforesaid, to resign or otherwise disqualify, then William Rudolph Luna states that there is no reason for the petition of Irene Lummis and the persons named as trustees in the Article Fifth of said last will and testament will continue to discharge their duties under said trust." The answer further stated that the trustees had given bond

8. Simms v. Thompson, 291 Mo. 493, 236 S.W. 876.

9. Mandel v. Bethe, Mo.App., 170 S.W.2d 87, 89; Audsley v. Hale, 303 Mo. 451, 261 S.W. 117; State ex rel. Potter v. Riley, 219 Mo. 667, 118 S.W. 647, 656.

10. Precision Metal Workers v. Northside Mercantile Co., 218 Mo.App. 544, 280 S.W. 82, and cases cited; Audsley v. Hale, 261 S.W. 117, supra; Simms v. Thompson, 236 S.W. 876, supra.

11. State v. Hurst, Mo.Sup., 280 S.W.2d 115; Scott v. Crider, 217 Mo.App. 1, 272 S.W. 1010; Scott v. Rees, 300 Mo. 123, 253 S.W. 998.

12. See Lilly v. Menke, 92 Mo.App. 354; City of Caruthersville v. Cantrell, Mo. App., 241 S.W.2d 790; Olson v. Olson, Mo.App., 184 S.W.2d 768, 771; Simms v. Thompson, 236 S.W. 876, supra.

(such is not indicated by the record) and the answer concluded with a prayer to dismiss the Irene Lummis petition "unless A. W. Landis, trustee as aforesaid, shall resign," in which event the prayer was for the appointment of a successor trustee. The next record shown is the withdrawal of Robert E. Hogan as attorney for the petitioner, Irene Lummis. This was on September 10, 1953. Thereafter the proceeding passed several terms and nothing was done until March 11, 1955.

On that day Mr. Landis filed with the court a document entitled "refusal to act as trustee," which recited that the administration had been completed, that the trustees (Luna and Landis) had not qualified or entered on their duties as such, nor received any assets belonging to said estate *as such trustees;* that he, Landis, declined and refused to qualify as trustee and suggested the appointment of a successor as provided in the will. In view of the dispute as to whether this document was a "resignation" or "renunciation," we will refer to it as the "withdrawal." On the same day the court made the order which is under attack. It is as follows:

"Now on this 11th day of March, 1955, same being the 14th day of the regular January Term, 1955, of this Court this cause being taken up, A. W. Landis files his Refusal to act as Trustee under the Last Will and Testament of Andrew Jackson, deceased, and Ralph Lummis of West Plains is by the Court appointed as Trustee to serve as such Trustee in lieu of or in place vacated by the resignation of A. W. Landis, an Attorney of West Plains, Missouri."

Court was then adjourned until April 6, on which date Ralph Lummis, the newly appointed trustee, filed and secured the court's approval of a bond in the sum of $50,000 (such bond is not in the record, but it seems apparent that this was in reality an administrator's bond).

On April 17, 1955, the appellant Luna (who it will be recalled is both trustee and beneficiary) opened the controversy with which we are now concerned by filing a motion to set aside the order of March 11, 1955, appointing Ralph Lummis as successor cotrustee. This motion recited as grounds that both the resignation of Landis and the appointment of the successor, Lummis, were made without notice to him, Luna. It alleged that the Irene Lummis motion for such appointment of successor trustee had passed from term to term, that it had been once set for October 25, 1954, and once for February 9, 1955, but no further action had been taken until the order of March 11, 1955; that he, Luna, was not afforded any opportunity to present evidence showing why Ralph Lummis should not be appointed. The motion then set forth various reasons why, in the opinion of Luna, Lummis was not a proper person to be appointed. After that time there followed various motions, including one by Ralph Lummis to require Landis and Luna "as individuals and as administrators of the estate of Andrew Jackson" to make surrender settlement. The record shows that Lummis was permitted to withdraw his administrator's bond and that both Luna and Lummis gave their separate bonds as trustee, which bonds were approved.

On June 28, 1955, and while the motion to vacate the appointment was pending, came A. W. Landis and filed in the circuit court a petition for order to deliver over assets. It recited in substance that administration had been completed and requested order of the court directing delivery of assets to the trustees. Presented along with the motion was an unsigned copy of "amended final settlement" of the two executors bearing date April —, 1955, and a copy of the petition to the probate court for order of distribution. On the same day a hearing was held on appellant's motion to vacate the appointment of Lummis. From the appellant's evidence it would appear that neither he nor his attorney had notice, written or otherwise, of any proposed order appointing a successor trustee on March 11, nor did they have notice of the time when Landis would pre-

sent his withdrawal. It does appear that Mr. Landis had, on several occasions, informally discussed both with the appellant and the court the fact that he intended at some time to withdraw as trustee, and that the court had requested Landis to hold off his final withdrawal because "something might be worked out," but it does not appear that either appellant or his attorney had notice, formal or otherwise, as to the time when such withdrawal would actually be filed or of any date when the court would consider and pass on the same. Mr. Landis testified that he did not give appellant's attorney notice of the time when he would file a withdrawal and that as he recalled it he handed the document to the court or clerk during the trial of some case. Luna was not present as he recalled. Appellant testified that he never learned of the appointment until three or four weeks after it was made. At this point the court remarked, "Couple of hours, wasn't it? I discussed it with your attorney and you were sitting in the courtroom." Both appellant and his counsel disputed this fact and informed the court that the incident to which he referred occurred not on the day the appointment was made, but on the day the bond was given (April 6). At the conclusion of the colloquy the court made the remark that he "could be mistaken," and we are left with the following conclusion, i. e., that the record is devoid of any process or notice of application to resign (if it was a resignation) given to Luna or to the remaindermen beneficiaries under the will; that Luna and his attorney were informed that a resignation (or refusal) by Landis would probably be filed but had no notice as to the time when it would be filed or when the court would act upon it, and therefore had no opportunity to be heard in respect thereto.

Appellant has designated his motion one based on irregularities patent on the face of the record, such as is recognized and extended in time by section 511.250 RSMo 1949, V.A.M.S. The irregularities contemplated by such a motion must appear on the face of the record proceedings antecedent to the judgment. But we are inclined to believe that appellant's motion must necessarily take also the attributes of a writ of error coram nobis, which has for its purpose the proof of a fact by evidence dehors the record, which fact so proved must be one which entered into the very makeup of the judgment sought to be overruled and which fact, had it been established, would have prevented the entry of the judgment.[13] Both such prongs of attack can be made in the same motion.[14] We take the motion as a direct attack upon the judgment which permitted the resignation and appointed a successor trustee. Therefore it is not necessary, in order to sustain such motion, that the judgment complained of be found void, but only to find that there was an irregularity whereby the rights of the parties may have been denied because of some failure to adhere to the established rules or mode of proceeding in the orderly administration of justice.[15]

*Were those interested in the trust estate, by reason of such interest solely, entitled to notice of the appointment of a substitute trustee?* A testator may appoint the person of his choice as trustee. Such person takes under authority of the will and without necessity of notice to or permission from anyone, and not by reason of appointment or confirmation of court. In fact, the action of the court in attempting to "appoint" the designated

13. State ex rel. Potter v. Riley, 219 Mo. 667, 118 S.W. 647; Cross v. Gould, 131 Mo.App. 585, 110 S.W. 672; Simms v. Thompson, 291 Mo. 493, 236 S.W. 876; Wooten v. Friedberg, 355 Mo. 756, 198 S.W.2d 1, loc. cit. 7.

14. Crabtree v. Aetna Life Ins. Co., 341 Mo. 1173, 111 S.W.2d 103; Casper v. Lee,

362 Mo. 927, 245 S.W.2d 132; Murray v. United Zinc Smelting Corp., Mo.Sup., 263 S.W.2d 351.

15. Carr v. Carr, Mo.Sup., 253 S.W.2d 191, and cases cited at loc. cit. 194; Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132, loc. cit. 138.

trustee is a nullity.[16] But the rule is different in respect to a successor trustee. Secs. 456.190 and 456.200 RSMo 1949, V.A. M.S., providing for appointment of successors, are not applicable to testamentary trusts.[17] The appointment of a successor presupposes that a vacancy exists. A trustee who has once entered upon his duties cannot resign except in accordance with the terms of the will, or with the consent of all persons interested beneficially or legally, or by order of court after due notice of the application to resign. Riggs v. Moise, 344 Mo. 177, 128 S.W.2d 632, and authorities cited at loc. cit. 635, 636.[18]

Thus far the parties are in substantial agreement. But respondent's position is that Mr. Landis had never accepted and consented to nor entered upon his duties as trustee, had not assumed charge or control of the real estate, and therefore the appointment of Lummis was not to fill a "vacancy" created by resignation, but was instead an *initial* appointment in accordance with the terms of the will and the refusal of the nominated trustee to act thereunder.[19] Appellant on the other hand contends that Mr. Landis had accepted the appointment made under the will by reason of the collection of numerous rentals from the real estate, such being acts which indicated acceptance of the trust.[20]

Acceptance of a testamentary trusteeship will be found from the acts performed by the person to be charged with such; and dealing with a part of the property which would be proper only if he were trustee constitutes an acceptance.[21] It is well settled that the offices of executor and trustee do not merge, although they may be conferred upon and the powers of such offices be exercised by the same person;[22] although in trusts of this character, absent an intention to the contrary appearing in the will, the trust begins immediately and does not await the conclusion of the administration, even though the assets may not be immediately available for use.[23] But bequests of personalty go into the hands of the executor and do not become subject to any control by the trustee until there has been a legal separation of the funds. Until such separation the acts done in respect thereto are in the capacity of executor and not as trustee.[24] However, it is different as to realty, for, absent the power conferred in the will or order of probate court, sections 462.280, 462.290, 463.150 et seq. RSMo 1949, V.A. M.S., the title as well as the power of control over realty goes directly to the heirs or devisees, in this case the trustees, and the executors have no concern with it.[25] This being the case, *if* Landis and Luna

16. In re Beauchamp's Estate, Mo.App., 184 S.W.2d 729; Riggs v. Moise, 344 Mo. 177, 128 S.W.2d 632, 634, 635; Williams v. Hund, 302 Mo. 451, 258 S.W. 703; Baker v. Dale, D.C.W.D.Mo., 123 F. Supp. 364.

17. Hitch v. Stonebraker's Estate, 125 Mo. 128, 28 S.W. 443; Brandon v. Carter, 119 Mo. 572, 24 S.W. 1035.

18. In re Parker's Trust Estate, 228 Mo. App. 400, 67 S.W.2d 114, has been sometimes cited as authority to the contrary, but see Professor Overstreet's dissertation and compilation of authority, 13 M.L.R. (1948), p. 257, et seq.

19. See Brandon v. Carter, 119 Mo. 572, 24 S.W. 1035; Oxley Stave Co. v. Butler County, 121 Mo. 614, 26 S.W. 367, 373; 76 A.L.R., page 1385 et seq.

20. It is not contended that the trustees had made any effort to pay any of the income over to the beneficiaries.

21. Restatement of the Law of Trusts, vol. 1, sec. 6, p. 23; Bogert, Trusts and Trustees, vol. 1A, sec. 150, p. 58; Scott on Trusts, vol. 1, sec. 6, pp. 50–52; Roberts v. Moseley, 51 Mo. 282.

22. In re Schield's Estate, Mo.Sup., 250 S.W.2d 151; West v. Bailey, 196 Mo. 517, 94 S.W. 273; State ex rel. Richards v. Fidelity & Casualty Co., Mo.App., 82 S.W.2d 123.

23. Estey v. Commerce Trust Co., 333 Mo. 977, 64 S.W.2d 608; Bolles v. Boatmen's National Bank of St. Louis, 363 Mo. 949, 255 S.W.2d 725.

24. Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387; In re Schield's Estate, Mo. Sup., 250 S.W.2d 151; In re Beauchamp's Estate, Mo.App., 184 S.W.2d 729.

25. In re Bartels' Estate, 238 Mo.App. 715, 187 S.W.2d 348; Thorp v. Miller, 137 Mo. 231, 38 S.W. 929; Bolles v. Boat-

took charge of the real estate and collected rents, without order of probate court giving them such authority, they necessarily did so not in the capacity of executors, but in the proper exercise of their duties as trustees.

The questions therefore are (a) did Landis and Luna take charge of the real estate and (b) if so was such by authority of probate court order (and therefore in capacity of executors) or without court order and therefore in the capacity of trustees. We find nothing in the testimony in reference to the handling of the real estate by Landis, or Landis with Luna, prior to March 11, 1955, the date of the order here attacked. We do find in the transcript, accompanying the "petition for order to deliver over assets" which was filed by Landis as executor with the circuit clerk (no order for filing, or that it be made a part of the record, being shown), the unsigned copy of what the petition states is the "amended final settlement" of the two executors, by which settlement the executors charge themselves with some real estate rentals received and take credit for the payment of taxes for several years. The "petition to deliver over" prays for what amounts to an order of distribution to the "duly appointed and acting trustees." We are of the opinion that such petition and copy of settlement never became a part of the record in this case. Certainly it did not *belong* in the proceeding, for the power to make settlement and order distribution by the executors is vested exclusively in the probate court, and the circuit court has no power to function in that respect.[26] Such document, if it was a document, had no more meaning or effect in the files of the circuit court (at least without an order of the court permitting it to be filed or making it of record) than an application for a marriage license. Be that as it may, it certainly was not a part of the record "antecedent to the judgment rendered" on March 11, 1955, as required on motion to vacate for irregularities patent. True, it might have been put in evidence in support of the motion coram nobis, but it *was never offered, received or considered in evidence.* We do not know whether the circuit judge even saw it prior to his ruling on the motion, and we may not consider it now.

But, irrespective of the foregoing, we are still not informed whether the collection of rentals and payment of taxes, if such occurred, was by Landis and Luna as executors or as trustees, for the reason that the record is silent as to whether there was any probate court order authorizing such. It seems to us that, where the irregularity does not appear upon the face of the record in a court of general jurisdiction whose judgment is attacked, the burden should be upon that person who attacks the regularity of such judgment to produce and show those facts which prove that such irregularity exists, for, absent a showing to the contrary, the existence of a matter necessary to confer jurisdiction will be presumed to have been determined favorably to the jurisdiction when the judgment was rendered.[27]

*Was appellant entitled to notice as a party to the proceeding then being carried on in the court?* Irene Lummis had filed a petition for the appointment of a successor trustee. Luna had filed answer denying that such vacancy existed. The case had ceased to be ex parte and the parties were adversaries. Whether an appointment could or should be made under the state of affairs which existed was a matter in controversy involving difficult questions of fact and law.

men's National Bank of St. Louis, 255 S.W.2d 725, supra; Baker v. Dale, D.C. W.D.Mo., 123 F.Supp. 364.

26. Section 481.020 RSMo 1949, V.A.M.S.; Smith v. St. Louis Union Trust Co., 340 Mo. 979, 104 S.W.2d 341; Hax v. O'Donnell, 234 Mo.App. 636, 117 S.W.2d 667; In re Beauchamp's Estate, Mo.App., 184 S.W.2d 729.

27. Gill v. Sovereign Camp, W.O.W., 209 Mo.App. 63, 236 S.W. 1073; Theener v. Kurn, Mo.App., 132 S.W.2d 707; Steinbaum v. Wallace, 237 Mo.App. 841, 176 S.W.2d 683, and cases reviewed; Baker v. Baker, Mo.App., 274 S.W.2d 322, 327, and cases cited.

 It is fundamental to our common-law sense of justice and fair play and it is also embedded in our constitutions that a litigant party shall have opportunity to be heard on matters which affect his interests.[28] "In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of the trial court's freedom of action in the exercise of its judicial discretion." Albert J. Hoppe, Inc., v. St. Louis Public Service Co., Mo.Sup., 235 S.W.2d 347, loc. cit. 350. "It is a cardinal principle, that whenever a party's rights are to be affected by a summary proceeding, or motion in court, that party should be notified, in order that he may appear for his own protection." George v. Middough, 62 Mo. 549, loc. cit. 551. See also section 506.060 RSMo 1949, V.A.M.S. Luna had interests which were affected both as beneficiary and as trustee in protecting the estate for all of the beneficiaries and the remaindermen. He, as a party to the proceeding then pending, was entitled to present his evidence and offer his views on the matter, both as to the validity of the resignation and, we think, (after the parties were once in court on the question) on the question of the unsuitability of the person proposed to be appointed as successor. If he was entitled to be heard he was entitled to notice, unless he is charged with having had notice. The majority of decisions on this question of notice have been made in determining the validity of an after-judgment order. It is generally said that such after-judgment orders are

an exception because, during the progress of a cause, a lawyer is charged with the duty and presumed to know what is going on in his case; whereas after the cause is terminated he is not charged with further vigilance in that respect.[29] But the exception points up the reason for the rule itself, that a party or his lawyer must be vigilant to follow the progress of the proceeding in which he is involved. When the lack of knowledge of a proposed order arises because of circumstances against which vigilance could not protect, the rule itself must fail. Thus in Bindley v. Metropolitan Life Ins. Co., 358 Mo. 31, 213 S.W.2d 387, where a case on the "Hold Docket" was dismissed without notice or hearing; and thus in Mandel v. Bethe, Mo.App., 170 S.W.2d 87, in a case which had been on appeal from the justice court for ten years, but was not on the trial or dismissal docket; and thus in In re Waters' Estate, Mo.App., 153 S.W.2d 774, where attorney fees were allowed without notice.

 This case was not set for hearing. It had been passed from term to term from May 1, 1953, to March 11, 1955, when the order complained of was entered. It had become a sleeping dog, and a fair measure of vigilance did not require that appellant's attorney sit constantly in the courtroom in order that he might be present when the dog was kicked. It would have worked no hardship to have notified Luna's attorney of the filing of the withdrawal as trustee and the appointment of a successor. And we think it is apparent that the failure to notify him arose simply from oversight, probably because there had been so many informal discussions concerning the matter that both Mr. Landis and the circuit judge more or less took appellant's knowledge for granted. Nevertheless we believe that he, *as a party to the proceedings* and having an interest in the matter, was entitled to such notice so that he might have opportunity to present his evidence, also his recommen-

28. Merrill on Notice, vol. 1, sec. 523, p. 519, sec. 531, p. 535; Wade on the Law of Notice, sec. 1171, p. 592; 60 C.J.S., Motions and Orders, § 15, p. 15.

29. Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656, 29 S.W.2d 126; 66 C.J.S., Notice, § 12, p. 648; cases cited in Baker v. Baker, Mo.App., 274 S.W.2d 322, loc. cit. 325.

dations, for whatever consideration the court cared to give them.

■ Respondent in his very able and persuasive brief contends that appellant is estopped because in his answer, after denying that a vacancy existed and praying for dismissal of the petition for appointment of a successor trustee, he prayed that in event Landis resigned a suitable person be appointed in his stead. We do not view this prayer as binding the appellant to agree that any procedure used to effect the withdrawal of Landis would be a valid one, or that such could be accomplished without notice to the pleader, so that he could not at that time question the validity of such resignation or the propriety of the appointment made thereafter.

■ *Was the error harmful?* A settlor can appoint almost anyone he chooses, but a court, in appointing a successor trustee, must exercise his discretion subject to clearly defined rules. It is said that the court will have regard for (1) the intention of the settlor; (2) the interests and wishes of the various beneficiaries; and (3) whether the appointment will promote or impede the proper administration of the trust.[30] The wishes of the beneficiaries are an important factor to be heard and considered, although the court is not bound to follow them.[31] And, although it is not uncommon for the settlor to do so, the court will not ordinarily appoint one having a beneficial interest,[32] nor one who is closely associated or a near relative of one of the beneficiaries.[33] In In re Hawke's Will, 222 App. Div. 643, 228 N.Y.S. 165, it was held improper to appoint a stepmother. At vol. 1, sec. 277, p. 480, Perry on Trusts, it is stated that some courts say they will not appoint a husband of the beneficiary because difficulties frequently grow out of that relation.

The wishes of the remaining trustee should also be given consideration,[34] although we agree with respondent that the remaining trustee may not *name* the successor (either by insisting upon the appointment of one certain person or unreasonably objecting to others who may be suggested).

In Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387, loc. cit. 397, the court adopts the statement from 39 Cyc., p. 263, wherein it is said, " '(W)here inharmonious or unfriendly relations exist between the trustees, or between them and the cestui que trust, there may be sufficient reason for removal.' "

In In re Estate of Beckwith v. Cooper, 258 Ill.App. 411, 416, the court said, "As a general rule, where an appointment of a particular person will engender ill feeling between trustees, or between trustees and cestui que trustents, so as to prevent beneficial cooperation in the administration of the trust, the appointment of that person should not be made."

The will of Andrew Jackson did not *expressly* exclude the husband of Irene from appointment. But the testator indicated some fear or suspicion that she would make trouble after the will was offered for probate and attempted to protect against that contingency. When the will was made she and her present husband were then married and living together. Again adverting to the Selleck case, Judge Westhues paid respect to the testator's intention by remarking, 56 S.W.2d loc. cit. 396, "The testator *had the opportunity but did not name* his own son, Henry L. King, a beneficiary under the will, as a trustee." (Our emphasis.)

30. Restatement of the Law of Trusts, sec. 108, p. 284; 90 C.J.S., Trusts, § 217 e, pp. 160, 161; Perry on Trusts, vol. 1, sec. 39, p. 29; Stone v. Baldwin, 347 Ill.App. 128, 106 N.E.2d 379, 385.

31. In re Jones Estate, 236 Iowa 563, 19 N.W.2d 611.

32. Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387.

33. Scott on Trusts, vol. 1, sec. 108.2, pp. 568, 569; Bogert, Trusts and Trustees, vol. 3, sec. 532, pp. 339, 340; Perry on Trusts, vol. 1, sec. 297, p. 505.

34. See 90 C.J.S., Trusts, § 217 e, p. 161.

On the hearing on the motion it was shown that at one time, after Mr. Landis had indicated his intention to withdraw, but prior to the date of such withdrawal, the appellant had suggested for appointment and had present in court at the time of such suggestion other persons who were willing to serve as successor trustee. We gather from the remarks of the court that one of such persons was a banker and another of them was an insurance man. To the reception of such evidence the respondent objected, and was sustained, on the ground that *"Mr. Landis hadn't resigned at that time and the place wasn't open"* (a position definitely inconsistent with that now taken by respondent before this court).

It would appear that the court has considered the wishes of one beneficiary, if not in opposition to the intention of the testator, certainly with nothing indicated in the will that the testator considered such appointment either welcome or desirable; that the person so appointed is the husband of one of the beneficiaries; that such appointment is against the wishes of the other beneficiary and trustee, who is the ex-husband of the wife of the trustee so appointed; that such appointment was made after such cotrustee had suggested the appointment of various disinterested persons; and under such circumstances it is not likely to "promote the proper administration of the trust" nor the preservation of the corpus for the remaindermen,[35] who are not represented here. We believe it would have been better to appoint a disinterested person as trustee.

We apprehend that the rules which limit the discretion of the chancellor must of necessity be flexible and bend to meet the situation at hand, and that it is sometimes either unwise or impossible to attempt to follow the wishes of all those interested, or any of those interested; and a situation may arise, and could possibly arise in this case, where the court might find it necessary to appoint a person undesirable under the general pronouncements which have been made, simply because the parties are unable to suggest, or the court is unable to find, any disinterested person able and willing and who in the opinion of the chancellor is desirable.

For the foregoing reasons the order of March 11, 1955, appointing a trustee is set aside and the case is remanded for further proceeding consistent with this opinion.

McDOWELL, P. J., concurs.

STONE, J., not sitting.

35. See In re McCaskey's Estate, 293 Pa. 497, 143 A. 209.